### BENJAMIN L. FLANDERS *vs.* ORLANDO COBB.

### Somerset. Opinion February 17, 1896.

*Practice. Amendment. Assumpsit. Deceit. Action.*

An amendment of a declaration which changes the nature of the action from assumpsit to tort is unauthorized.

The case of *Rand* v. *Webber*, 64 Maine, 191, was never intended to authorize amendments to the extent of allowing the form or nature of the action to be changed.

Plaintiff and defendant traded horses, and defendant turned out a negotiable promissory note signed by a third party, as boot between horses, and defendant indorsed the same in blank. The note was not paid when it became due, nor was the defendant seasonably notified so as to hold him as an indorser, and the plaintiff claimed to recover against the defendant in an action of deceit for false representations made by defendant in reference to the financial responsibility of the maker of the note.

*Held*; That the evidence was such as to warrant the court in coming to the conclusion that plaintiff was not deceived by the alleged misrepresentations and that the action could not be maintained.

*Rand* v. *Webber*, 64 Maine, 191, distinguished.

ON EXCEPTIONS AND REPORT. ·

This was an action of assumpsit on an account annexed, and the following special count:

"Also, for that at said Hartland on November 23rd, A. D., 1892, the plaintiff was then and there the owner and possessor of a certain horse of great value, to wit, of the value of one hundred and seventy-five dollars, and the said defendant being then and there the owner of a certain other horse of the value, to wit, of one hundred dollars, it was then and there agreed between said plaintiff and defendant that they should exchange said horses and that the defendant should pay to the plaintiff the sum of seventy-five dollars difference between said horses. And the said defendant being then and there the owner and possessor of a certain promissory note dated September 21, A. D., 1892, signed by one Joseph Frost, whereby the said Joseph Frost for value received promised the said Orlando Cobb to pay to him or his order the sum of eighty dollars with interest in one year from

the date of said note. And the said defendant then and there intending to deceive and defraud the plaintiff then and there falsely and fraudulently represented to the plaintiff and then and there promised the plaintiff that the said note was perfectly good ; that the said Joseph Frost, who was then and there unknown to the plaintiff was then and there a man owning considerable property and responsible and good for the payment of said note and that the said Joseph Frost would pay said note at its maturity. And the said plaintiff relying upon the said promises so made by the defendant to the plaintiff as aforesaid did then and there exchange said horses with the defendant, and then and there received of the defendant the defendant's said horse and the aforesaid promissory note, and gave in exchange therefor the plaintiff's said horse and the sum of five dollars and eighty-two cents, the sum last named being the then difference between the said agreed boot money of seventy-five dollars and the amount of the principal and interest then accrued on said note.

"And the plaintiff avers that the said Joseph Frost on said November 23rd, 1892, was not then and there a man owning considerable property and responsible and good for the payment of said note and that the said note was not then and there perfectly good, and that the said Joseph Frost did not pay said note at its maturity although requested and that the said Joseph Frost on said November 23rd, and long before was and ever since has been utterly worthless and insolvent, all of which was then and there unknown to the plaintiff."

At the second term, the following amendment was allowed after striking out the foregoing counts. The amendment was allowed against the defendant's objections, and to granting which he took exceptions :

(Amended Declaration.)

"For that at said Hartland on November twenty-third, A. D., 1892, the plaintiff was then and there the owner and possessor of a certain horse of great value, to wit : of the value of one hundred and seventy-five dollars and the said defendant then and there being the owner of a certain other horse of the value

of one hundred dollars, it was then and there agreed between the plaintiff and defendant that they should exchange said horses and that the defendant should pay to plaintiff the sum of seventy-five dollars difference or boot between said horses. And the said defendant being then and there the owner and possessor of a certain promissory note dated September 21st, 1892, signed by one Joseph Frost, whereby the said Joseph Frost for value received promised the said Orlando Cobb to pay to him or his order the sum of eighty dollars with interest in one year from the date of said note, and the said defendant then and there intending to deceive and defraud the plaintiff then and there falsely and fraudulently represented to the plaintiff that the said note was perfectly good, that the said Joseph Frost who was then and there unknown to the plaintiff was then and there a man owning considerable property, a farm near Harmony village and a stage line; and responsible and good for the payment of said note and that the said Joseph Frost would pay said note at its maturity. And the said plaintiff relying upon the said false and fraudulent representations so made by the defendant to the plaintiff as aforesaid did then and there exchange said horses with the defendant and then and there received of the defendant the defendant's said horse and the aforesaid promissory note and then and there gave in exchange therefor the plaintiff's said horse and the sum of five dollars and eighty-two cents, the sum last named being the then difference between the said agreed boot money of seventy-five dollars and the amount of the principal and interest then accrued on said note. And the plaintiff avers that said Joseph Frost on November 23rd, 1892, was not then and there a man owning considerable property, a farm near Harmony village and a stage line, and was not responsible and good for the payment of said note and that the said note was not then and there perfectly good and that the said Joseph Frost did not pay said note at its maturity although requested and that said Joseph Frost on said November 23rd, 1892, and long before said last named date was and ever since has been utterly worthless and insolvent, all of which was then and there unknown to the plaintiff but was at the time of said representations well known

to the defendant. And so the said defendant by means of his said false affirmation, hath greatly injured and defrauded the plaintiff."

After the testimony in the case was taken out, it was by agreement of the parties submitted to the full court for decision upon so much of the evidence as was competent and admissible, the law court to render such judgment as the legal rights of the parties might require.

The case is stated in the opinion.

*E. N. Merrill and G. W. Gower*, for plaintiff.

Courts are very liberal in the allowance of amendments, where the "persons and case can be rightly understood." *Solon* v. *Perry*, 54 Maine, 493.

" No process or proceeding in courts of justice shall be abated, arrested, or reversed, for want of form only, or for circumstantial errors or mistakes which by law are amendable, when the person and case can be rightly understood." Such errors and mistakes may be amended on motion of either party, on such terms as the court orders. R. S., c. 82, § 10. An amendment should be allowed or disallowed, according as it is, or is not, in the furtherance of justice. There can be no other rule to guide the court in exercising its discretionary power in such cases. *Hayford* v. *Everett*, 68 Maine, 505.

Cases of amendment : In *Perrin* v. *Keene*, 19 Maine, 358, K. and W., late partners, dissolved the copartnership. W., without authority, then gave a firm note for a firm indebtedness. In an action on the note, it was held, that the note being unauthorized, was not payment, and plaintiff was allowed to amend by declaring on the original debt, being the same subject matter. *Haynes* v. *Jackson*, 66 Maine, 93, an action of trespass, q. c., an amendment was allowed describing the close as situate in a different town than that alleged. In *Cameron* v. *Tyler*, 71 Maine, 27, an amendment was allowed changing a capias writ to a capias or attachment. *Walker* v. *Fletcher*, 74 Maine, 142, was an action of case for the negligent burning of property. An amendment was allowed substituting " birch," for " ash " lumber.

In *Pullen* v. *Hutchinson*, 25 Maine, 252, the court said: "A

declaration so defective that it would exhibit no cause of action, may be cured by an amendment without introducing a new cause of action.  In *Rand* v. *Webber*, 64 Maine, 19, Webber sold Rand some land.  A ten acre piece was omitted, either by mistake or fraud.  Rand brought an action of assumpsit to recover back so much of the purchase money as said omitted parcel was actually worth.

The court held that assumpsit could not be maintained, and allowed plaintiff "to have his writ amended and his pleadings reformed conformably to an action of tort, by paying costs and recovering none up to the date of the amendment."

The above named cases are not cited as authorities directly, for the question we are discussing, but as illustrating the departure from the original declaration allowed by the courts.  The case of *Rand* v. *Webber*, however, we regard as an authority for our position, and as conclusive.

The amendment in this case introduces no new cause of action.

It is for the same cause of action set out in the original writ and declaration.  The original declaration definitely informs defendant of the charge brought against him, viz : " And the said defendant then and there intending to deceive and defraud the plaintiff then and there falsely and fraudulently represented to the plaintiff, . . . that the said note was perfectly good ; that the said Joseph Frost who was then and there unknown to the plaintiff was then and there a man owning considerable property and responsible and good for the payment of said note and that said Joseph Frost would pay said note at its maturity," etc.

*S. S. Brown*, for defendant.

SITTING : PETERS, C. J., FOSTER, HASKELL, WISWELL, STROUT, JJ.

FOSTER, J.  The plaintiff and defendant traded horses.  The defendant was to pay seventy-five dollars to the plaintiff as the difference between horses, and in lieu of the money turned out a negotiable promissory note of eighty dollars, which he held against one Joseph Frost.  The note was not then due, and the defendant indorsed it in blank.  The note was not paid at

maturity, nor was the defendant seasonably notified so as to hold him as an indorser.

The plaintiff claims that while the trade was going on the defendant represented that the maker of the note was a man of means and financially responsible, and that these statements were false and fraudulent, and made with intention of deceiving him, and that he relied upon them and was thereby deceived and injured.

On the other hand, the defendant asserts that he made no misrepresentations; that what he said was but the honest expression of an opinion; that the plaintiff neglected seasonably to notify him so as to hold him as an indorser of the note, and that in consequence of that neglect this suit was brought in which he seeks to collect his debt.

The action was originally framed in assumpsit, the declaration containing three counts. At the second term the presiding justice allowed an amendment of the writ by striking out the three counts in assumpsit and substituting therefor a count in case for deceit. To the allowance of this amendment the defendant's counsel seasonably objected, on the ground that it changed the form as well as introduced a new cause of action.

The case is before us upon exceptions as well as report.

I. The first question, and one of vital importance, is, whether this amendment was allowable.

We think it was not.

Our attention has been called to no case under our system of practice that goes to the extent of authorizing the court to allow an amendment which changes the nature of the action from assumpsit to tort. The case of *Rand* v. *Webber*, 64 Maine, 191, was never intended to authorize amendments to the extent of allowing the form or nature of the action to be changed. Upon examination of the facts in that case, it will be found that the amendment there was but the correction of an error in the writ, the correction of an amendment (improperly made) to the original declaration, so as to restore the declaration as originally framed and prevent a change in the nature of the action from what seemed to be its form as originally drawn, and to escape

the statute of limitations that might be pleaded to another suit. The original count was more in the nature of deceit than assumpsit, and the last amendment was but a restoration to its former self—the spirit taking on form "in the furtherance of justice." "As the special count stood," say the court, "it could easily be amended so as to have been an action of deceit." In *Dodge* v. *Haskell*, 69 Maine, 429, 434, this court, in referring to *Rand* v. *Webber*, supra, remarked that it "has been erroneously supposed to allow an amendment to the extent of allowing the nature of the action to be changed. That case merely allowed a correction of the writ, already improvidently and improperly amended, that such a result might be avoided."

In the present case, the change is absolute from assumpsit to an action on the case for deceit. It is not a restoration of form as originally drawn. The cause of action, as originally stated, was clearly and distinctly set forth in appropriate counts based upon an alleged promise. There was no defect to be amended, or correction of the cause of action as originally stated, as in *Rand* v. *Webber*, supra. The amendment was not the correction of a defect in pleading, but the addition of a cause of action not set forth in the original declaration, as well as a change of the nature of the cause of action. This was clearly wrong. While the greatest liberality is allowed in the matter of amendments, the authorities are abundant and uniform, that no new cause of action can be introduced by way of amendment against the objection of the defendant.

In *Houghton* v. *Stowell*, 28 Maine, 215, it was held that a change in the form of action from debt to case was unauthorized, and that the court had no authority to allow it.

A fortiori, in the present case, would it be unauthorized to allow an amendment which changes the nature of the action from assumpsit to an action on the case for deceit. The plea of the defendant in the former case is "never promised," while in the latter, it is "not guilty." At common law the court had no power to allow an amendment which introduced a new cause of action. Com. Law Pl. § 142. Nor has this been extended by statute in this State. *Farmer* v. *Portland*, 63 Maine, 46;

*Cooper* v. *Waldron*, 50 Maine, 80. Neither can counts which are in form ex contractu be joined with those in form ex delicto. *Corbett* v. *Packinton*, 6 Barn. & Cress. 268 ; 1 Ch. Pl. 201*. Unless this rule is observed confusion would arise in the forms of pleas and judgments which the different forms of actions require.

The remedies and forms of action which have been afforded to parties, and which have been sanctioned by long usage and approved by the highest authorities, should be adhered to, and it is not the province of the court, upon reasons of supposed convenience or occasional hardship, to dispense with them, and to substitute one for another, varying the rights of one or both of the parties.

II. But notwithstanding the result to which the court may have arrived upon the amendment to the writ, the plaintiff claims to recover upon the alleged false and fraudulent misrepresentations made by the defendant in reference to the financial responsibility of the maker of the note at the time the trade was concluded.

We have examined the report of the evidence and feel satisfied that instead of relying upon the statements of the defendant and being deceived thereby, the plaintiff relied upon the defendant as an indorser to pay the note when it became due ; and had he pursued the course prescribed by law in regard to negotiable paper, this suit would never have been instituted. Having failed to comply with the law in not giving notice of the dishonor of the note, and thus lost his claim upon the defendant as an indorser, this suit is brought upon the alleged misrepresentations of the defendant.

The evidence, however, in our opinion, does not sustain the plaintiff in this position. He testifies, in substance, that the defendant said he could not trade because the plaintiff asked so much " for boot," and wanted to know if plaintiff would take a note and he replied that he could get along if the defendant had a good one. Defendant said he had one against Joseph Frost. Plaintiff told him he didn't know anything about him, and asked defendant if he would not give him his. The defendant replied

that he would rather let the note go. The plaintiff asked what Frost's business was, and to this defendant replied that he owned a stage line and a farm, and was perfectly good. To this the plaintiff replied, that if he was perfectly good and he could have his pay without running round, — no trouble, — he would take the note if the defendant would put his name on it. In the house while looking for a pen, plaintiff says that the defendant said: "It won't make any difference with the note, it won't do any good if I put my name on it." "I says, I guess we will have your name on it, and he put his name on it."

The defendant's testimony is substantially this. "He asked me about Mr. Frost, and I told him as far as I knew, . . . . . . that I took the note supposing the note was good, and that Frost said, when I took the note, that he was driving the stage line and expecting to get the money to pay for the horse that I let him (Frost) have out of driving the stage . . . . . . and wanted me to wait a year for the pay for the horse, or I could have half of it in June, and then the balance of it for the year." He says further in answer to plaintiff's inquiry, Mr. Flanders, I don't know anything in particular about this man, but I suppose it is good." He also testifies that the plaintiff said: "I don't know this man very well, but if you indorse the note, I will take it," and thereupon he indorsed the note, delivered it to the plaintiff and the trade was concluded.

From the terms of the stipulation in the report, the entry should be,

*Exceptions sustained.*
*Judgment for defendant.*