CHARLES A. PREST

*vs.*

THE INHABITANTS OF THE TOWN OF FARMINGTON.

Sagadahoc.   Opinion September 11, 1918.

*Action of assumpsit.   Rule as to bringing an action in the nature of assumpsit for damages caused by deceit and misrepresentation.   Rule of procedure in case where party has entered into a contract and claims fraud and misrepresentation.   Rights of the parties where the fraud is discovered.   Rule as to where false expressions do not generally constitute fraud in law. Right of recovery where party relying upon the alleged misrepresentation had the same or better means of knowledge than the party making the same.*

The plaintiff made a contract with the defendants to construct certain lines of sewers for a fixed price.   He brings this action of indebitatus assumpsit upon an account annexed to the writ, to recover an alleged balance of the contract price, and includes in his account a charge for extra labor of men and teams along and within the limits of lines of sewers covered by the special contract. Recovery is claimed upon the ground that certain material misrepresentations as to the character of the excavation were made to him by the selectmen, and that in this form of action he is entitled to recover for the extra cost occasioned thereby.

*Held:* that where a party agrees to do work for a specified sum under a fraudulent representation, he can only recover in an action of indebitatus assumpsit according to the terms of the contract, although, when he discovered the fraud, he might have repudiated the contract and sued for deceit.

The duty to pay damages for a tort, does not imply a promise to pay them, upon which assumpsit can be maintained.

The evidence fails to show any attitude or action on the part of the selectmen recognizing, or undertaking to pay, the charges for so-called extra work on the sewers, except in relation to an old well and an extension in Perham Street.

Action of assumpsit to recover for certain labor and materials furnished defendant town.   Defendant filed plea of general issue and also brief statement.   Verdict for plaintiff in sum of $1347.88. Defendant filed motion for new trial.   Judgment in accordance with opinion.

Case stated in opinion.

*McGillicuddy & Morey,* for plaintiff.

*Frank W. Butler,* and *Sumner P. Mills,* for defendants.

SITTING: CORNISH, C. J., SPEAR, HANSON, PHILBROOK, DUNN, MORRILL, JJ.

MORRILL, J.  This action is brought to recover a balance of $2241.61 alleged to be due the plaintiff under three independent contracts between plaintiff and defendants, and for extra labor and materials on each piece of work.  The aggregate of the contract prices was $4425; this is agreed to by both parties.  The plaintiff gives credit for items aggregating $4383.70; the defendant claims credit for items aggregating $4457.20, and it is admitted that the latter amount is correct.  In the account annexed to the writ the amounts claimed for extra work and materials on each job are stated in lump sums; it appears, however, from reading the record that a bill of particulars was prepared and used at the trial before the jury, but it was not made part of the record and no copy has come to the possession of the court.  The jury found a general verdict for $1347.88, which the defendants now move to set aside, insisting as stated in their brief statement filed under the general issue "that no further liability was incurred by them in regard to either piece of work than the contract price."  The contracts were not reduced to writing; it is therefore necessary, in passing upon the contentions of the parties, to ascertain from the evidence what were the actual terms of the contracts for each piece of work.

1.  The Sewer Contract.  At the annual town meeting in March, 1913, the inhabitants of the town of Farmington appropriated $3500 for the construction of certain lines of sewers.  In July of that year the plaintiff came to Farmington "to look up the job—to learn what they wanted done;" at that interview the selectmen told him "something about what they had to do, just about the same knowledge that I had before I went there," as the plaintiff says in his testimony, page 16; at that time the selectmen and the road commissioner showed him over the proposed line.  At that visit of the plaintiff to Farmington or a short time later (the exact date does not appear) the plaintiff made a contract with the defendants to construct an 8 inch, 10 inch and 12 inch sewer in Front Street and Broadway and from a

point at Main Street and Broadway Southerly to the Exchange Hotel; also to construct a 6 inch sewer from an existing 8 inch sewer in High Street extension, along the North and West side of the old Tannery Brook to Perham Street; the contract price was to be thirty-five hundred dollars, the amount appropriated by the town for that work. Both parties agree that such a contract was made; the part relating to the extension Southerly in Main Street was modified by mutual agreement; no claim for extra work and materials is made on account thereof and that change does not enter into this case. When the first interview was had the lines of the sewers had not been surveyed and Mr. Prest agreed to obtain an engineer and to throw in his time in assisting the engineer. He accordingly engaged Mr. Pierce of the Sanders Engineering Company to run out the lines. At some time a contract for the work was drafted but never signed. In offering this paper in evidence plaintiff's counsel said: "This paper I offer, not for the purpose of a contract, because they never agreed. There are some things left out, but as far as establishing the course, it is in here, and there is an admission that the parties were together. That makes the courses admissible. Upon that point there is no disagreement. I offer it for that purpose and no other." It is to be noticed that counsel said, "they never agreed," yet he brings his action to recover an amount due upon a contract price of thirty-five hundred dollars. What, then, were the terms of the contract upon which plaintiff now sues? What were the specifications of that contract, which determine the line between work under the contract and alleged extra work?

If the unsigned contract is evidence only of the courses of the proposed sewers, for which purpose only it was offered, there is no evidence whatever of any details or specifications of the contract as made, save only in the particular that the contractor was to connect up existing sewers with the new lines. The case does not show what agreement, if any, the parties arrived at as to the grades, depth, depth of covering, location of manholes or exact location of intercepted sewers,—no specification of location of the sewer as to the water pipes which were known to be in the ground. The conclusion is irresistible that after looking over the ground, with the knowledge which he had when he first came to Farmington, Mr. Prest agreed to construct the proposed sewers for the amount of the appropriation. In fact he substantially says as much. On page 55 of the record he

testifies: "Q. When did you make your trade with them? A. I don't remember the date. Q. Now what was your trade? What trade did you finally make with the selectmen? A. Well, I agreed to lay those two sewer lines for $3500."

This is likewise the version of the selectmen. Mr. Prest's actions are consistent therewith; he offered to procure for the town an engineer to run the lines, and to give his own time as an assistant; he thus had the opportunity to make all tests and to obtain all knowledge of the location which would enable him to do the work properly and profitably to himself. He now brings suit to recover, under the account annexed, the contract price. In addition to the item for the contract price he claims in the account annexed the following items:

"To extra on 8 inch, 10 inch and 12 inch line,
  Front and Broadway Street to High Street          $336.95
  Plus 15% profit on $336.95,                          50.50."

An examination of this claim as tabulated in the brief of plaintiff's counsel shows that it is all for labor of men and teams along and within the limits of lines of sewers covered by the special contract. Recovery is claimed upon the ground that certain representations as to the character of the excavation were made to him by the selectmen, that these representations were material and were false and that in this form of action he is entitled to recover for the extra cost occasioned thereby. It may well be doubted whether the alleged misrepresentations, if made, were anything more than honest expressions of opinion, or honest statements of fact not purporting to be of knowledge. *Holbrook* v. *Connor*, 60 Maine, 578; *Gordon* v. *Parmalee*, 2 Allen, 212. "Where the whole subject, in fact, rests in the opinion of the parties, and cannot reasonably be understood otherwise, false expressions on either hand do not generally constitute fraud in law." *Thompson* v. *Ins. Co.*, 75 Maine, 55, 61. It may well be claimed that the plaintiff did not rely and had no right to rely upon the alleged misrepresentations because they related to facts of which he had equal or better means of knowledge than the selectmen had under the circumstances of this case. *Patten* v. *Field*, 108 Maine, 302; *Savage* v. *Stevens*, 126 Mass., 207. See cases cited in *Long* v. *Athol*, 196 Mass., 503, 504.

However that may be, and we express no opinion in relation thereto, upon the plaintiff's claim he cannot recover in this form of action.

Where a party agrees to do work at a specified sum under a fraudulent representation, he can only recover in an action of indebitatus assumpsit, according to the terms of the contract, although, when he discovered the fraud, he might have repudiated the contract and sued for deceit. *Selway* v. *Fogg*, 5 M. & W., 83.

So when a party purchases goods on credit fraudulently intending at the time of the contract not to pay for them, and the vendor brings assumpsit for the goods sold before the time of credit has expired, the action cannot be maintained although the vendor might have treated the contract as void and have sued the vendee immediately in trover to recover the value of the goods. By bringing the action in assumpsit, the plaintiff affirmed the contract. *Ferguson* v. *Carrington*, 9 B. & Cr., 59.

Where the parties have made a contract for themselves, covering the whole subject matter, no promise is implied by law. *Phelps* v. *Sheldon*, 13 Pick., 52; *Whiting* v. *Sullivan*, 7 Mass., 107; *Steam Mill Co.* v. *Westervelt*, 67 Maine, 446, 449.

The duty to pay damages for a tort does not imply a promise to pay them, upon which assumpsit can be maintained. *Cooper* v. *Cooper*, 147 Mass., 370.

The evidence fails to show any attitude or action on the part of the selectmen recognizing, or undertaking to pay, the charges for so-called extra work on the sewers, except in relation to an old well and an extension in Perham Street, of which we shall speak later. The items appear to have been kept by the plaintiff as showing his loss on account of the alleged misrepresentation. The right of action arises not on a failure to keep and perform a promise, but upon a false representation. Why then should an action of assumpsit be brought? See *Noyes* v. *Loring*, 55 Maine, 408, 411.

Mr. Prest discovered the true character of the excavation at an early stage of the work, and if his present contention is true, he might then have repudiated the contract and recovered the fair value of the work done and materials furnished. *Selway* v. *Fogg*, supra; *Long* v. *Athol*, 196 Mass., 497. And it has been held that a municipality may be charged with responsibility for misrepresentations which have been made by its agent to induce a person to enter into a contract with it. *Sharp* v. *Mayor, etc., of New York*, 40 Barb., 256.

But an action in indebitatus assumpsit upon an account annexed, to recover damages arising from false representations as to the subject matter of a contract, which has not been repudiated, is beyond the "furthest venture" noted in *Tukey* v. *Gerry,* 63 Maine, 151, 153. See *Brown* v. *Starbird,* 98 Maine, 292; *Gilmore* v. *Bradford,* 82 Maine, 547.

Included in this charge of $336.95 are certain items amounting to $28.59 for labor and materials in filling up an old well or reservoir which was found in the line of the sewer on Broadway. There is some evidence that the selectmen directed the plaintiff to fill this well, and in the absence of any testimony on the point from the selectmen, we think that the jury would have been warranted in finding a promise to pay for that work.

Also in addition to the item for the contract price, the plaintiff claims in the account annexed, the following items:

"To extra work on sewer through the hill from Station Four to Station Nine, B line and extra around the hill Station Nine, C line to Station Nine, B line and to Perham Street, 200 feet of six inch pipe,                    $1062.63

To 15% profit on the $1062.63,                    159.30."

Reference to the tabulation in the brief of plaintiff's counsel shows that this item of $1062.63 is made up of three parts:

(a)   Charges for labor of men and for material on 6 inch Sewer line through Clay Hill, August 5 to August 15, 1913,          $568.75.

This work was unquestionably a part of the work which was to be done under the contract for $3500. The line of sewer through the clay hill from station four to station nine, B line, was on the course first laid out by Mr. Pierce. The plaintiff bases his claim for this item upon the alleged misrepresentations before considered. It must be rejected.

(b)   Charges for labor of men and for material on 6 inch Sewer line around the hill, station 9 C line to station 9 B line August 18 to August 26, 1913                    $272.80

The plaintiff claims that the original line through the hill, called line B, was changed by order of the selectmen to the line around the hill, called line C, and he gives this item of $272.80 as the cost of lay-

ing the sewer for the additional distance. Mr. Prest says that the course of the sewer was changed by the selectmen on account of the depth and the consequent difficulty and expense of repair, if the sewer should become obstructed. This contention rests on his testimony alone; it is contradicted by three selectmen, and is not supported by the foreman, Mr. Lowery, or the engineer on the work, Mr. Fish. The claim is highly improbable in that the depth of the sewer on the original B line was known to the selectmen when the work was first laid out. Without discussing it in detail, we may say that the evidence falls far short of sustaining the reason given by plaintiff for the change, and overwhelmingly preponderates against any liability on the part of the town for the additional expense. The difficulty of the digging furnishes the far more probable reason for the change of of course. We think that the jury was not justified in including this amount of $272.80 in their verdict, if they did include it.

(c)    Charges for constructing the 6 inch sewer within and along Perham Street a distance of 200 feet,        $221.08.

The jury was warranted in allowing this item. The Northerly end of the 6 inch sewer was given to Mr. Prest, as at Perham Street. It is true that he was to connect up all the sewers in the Tannery Brook section; but it appears by the testimony of Mr. Titcomb that none of the selectmen knew the exact location of the sewers; to connect with the sewer on Perham Street it was necessary to lay the 6 inch pipe for a distance of two hundred feet in the street. We think that Mr. Prest should have compensation for that work; the witnesses agree that one dollar per lineal foot was a fair price, and the charge does not greatly exceed that estimate.

2.    The Pier Point on Center Bridge. There was a sharp conflict of testimony as to this piece of work. Mr. Prest claims that the selectmen agreed to pay him five hundred dollars to put in a concrete pier point after his own design, and that later Mr. Marble, the selectman who had the oversight of this particular piece of work, directed him to enlarge the structure substantially increasing the amount of labor and material. Mr. Marble claims that the pier point was to be constructed of specified dimensions; that Mr. Prest began to build a smaller pier than he had agreed to build and upon complaint being made, voluntarily extended the point up stream. Upon this controverted issue the jury would have been warranted in finding for

Mr. Prest; but while they might so find, there seems to be no reliable basis for estimating the amount of extra work and material, because neither the jury nor the court has any definite knowledge of the size of the pier point which Mr. Prest proposed to build. The only method of arriving at the amount of extra work with approximate accuracy is to take Mr. Prest's estimate of eighty cubic yards for the entire work, and his estimate of the cost at $8.045 per cubic yard. The total cost would then be $643.60, of which $143.60 would be for extra work and material in excess of the contract. This, we believe, would be a liberal finding. Mr. Prest's estimate of cost per cubic yard includes his own time at ten dollars per day; and his estimate of cubic contents is substantially the same as given by Mr. Mallett, a witness for the defendants, and twenty cubic yards in excess of the estimate given by Mr. Fish who was in the plaintiff's employment.

3. Fairbanks Bridge Job. Here again it is only necessary to say that there was a sharp conflict of testimony and the jury would be warranted in sustaining the plaintiff's contention. The item includes a charge of $25 for keeping the bridge open to travellers during the repairs, which appears reasonable. We may assume, therefore, that the jury allowed this entire item.

Thus stating the account it stands:

| | |
|---|---:|
| Sewer Job. Contract, | $ 3500.00 |
| Extra-Perham Street, | 221.08 |
| Filling old Well, | 28.59 |
| Pier Point Job. Contract, | 500.00 |
| Extra, | 143.60 |
| Fairbanks Bridge. Contract, | 425.00 |
| Extra, | 220.85 |
| | $5039.12 |
| Admitted Credits, | 4457.20 |
| | $581.92 |

To this amount should be added interest from the date when the work was completed in the winter of 1913-14, to the date of the verdict, substantially four years and two months, $145.48, making a

total of $727.40.    Giving the verdict of the jury the full consideration
to which it is entitled, the verdict should not have exceeded above
amount.    The entry will therefore be:

> *Motion sustained, unless within
> thirty days after notice of this
> decision is received by the Clerk
> of Courts for Sagadahoc County,
> the plaintiff remits all of said
> verdict in excess of $727.40, in
> which case motion overruled.*