BENJAMIN H. COFFIN
*vs.*
WINFRED S. DODGE

Sagadahoc.    Opinion, November 13, 1950.

*Harold J. Rubin,*
*Edward W. Bridgham,* for plaintiff.

*Benjamin L. Berman,*
*David L. Berman,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.    This is an action of tort for deceit brought in the Superior Court for Sagadahoc County and heard by a justice without the intervention of a jury.    The justice

found for the plaintiff and assessed damages in the sum of $200. The case comes to the Law Court on defendant's exceptions.

The facts, briefly, are that prior to May 25, 1949 the plaintiff Benjamin H. Coffin of Brunswick, Maine, placed an order for a Chevrolet truck with one Joseph Goodwin who was an automobile dealer in Brunswick, and on May 25, 1949, while awaiting delivery of the truck from Goodwin, 'the defendant Winfred S. Dodge of Bowdoinham, Maine, came to the plaintiff Coffin and, according to the plaintiff's testimony, induced the plaintiff to give an order for a Chevrolet truck to the defendant. The defendant Dodge was an automobile dealer and a competitor of Goodwin. The plaintiff says that the defendant Dodge falsely represented to him (the plaintiff) that Goodwin would not be able to deliver a Chevrolet truck for several weeks. The plaintiff stated that he (defendant) said he had "talked with the head Chevrolet man for this whole district" and could deliver a Chevrolet truck "right off." As the plaintiff Coffin was in the lobster business and needed a truck as soon as possible, the•plaintiff Coffin paid to the defendant Dodge the sum of $200 for a deposit, and signed an order to the defendant for a Chevrolet truck to be delivered to him (the plaintiff) on or before June 20, 1949. Goodwin, however, delivered a truck to the plaintiff on May 31, 1949 and the plaintiff accepted it.

The plaintiff paid Goodwin for the truck the sum of $1,277.15, having received from Goodwin a discount of $200. The plaintiff demanded of the defendant Dodge a return of his $200 deposit given to Dodge on May 25, 1949, which was refused. This action of deceit was then brought by the plaintiff Coffin against the defendant Dodge.

The declaration alleged, in substance, a misrepresentation on the part of the defendant Dodge in that Dodge stated to the plaintiff that a motor truck could not be delivered by

Goodwin until July 15th, while he (the defendant) could deliver one on or before June 20th.

The defendant claims, by his bill of exceptions, that the plaintiff in this action for deceit is bound by the allegations in his declaration and cannot now say he relied on other representations not alleged; that neither the allegations nor the proof were sufficient to maintain this action; that no damage was proved; and that if the plaintiff has a remedy it is by rescission of the contract with defendant, and an action against defendant for money had and received. The plaintiff claims, on the other hand, that all the elements to sustain the action for deceit were by him alleged in his declaration, and were also proved at the trial.

Most legal rights which have been violated have their own forms of action for the remedies. The proper method, to correct a wrong or to collect a claim, should be followed in order to effect a recovery. Remedies and the forms of action which have been approved by the court for a long period are adhered to in order to avoid confusion and uncertainty. The form and the method of procedure in an action of deceit, for example, have been long established in this state, and closely followed for generations. Every essential element must be alleged and must be proved by affirmative evidence. "For the action of deceit was not intended to be made easy to prove. Its purpose was to restrain law suits in commercial and trading transactions so that every time a party, through reliance upon opinion, or trade talk, or without taking pains to inquire for himself, got the bad end of a bargain he should not be permitted to fly to the courts for redress." *Crossman* v. *Bacon & Robinson*, 119 Me. 105; *Flanders* v. *Cobb*, 88 Me. 488.

In the case of *Crossman* v. *Bacon & Robinson*, 119 Me. 105, 109, the elements in deceit are stated to be " (1) a material representation which is (2) false and (3) known to be false, or made recklessly as an assertion of fact without

knowledge of its truth or falsity and (4) made with the intention that it shall be acted upon and (5) acted upon with damage. In addition to these elements it must also be proved that the plaintiff (6) relied upon the representations (7) was induced to act upon them and (8) did not know them to be false, and by the exercise of reasonable care could not have ascertained their falsity. Every one of these elements must be proved affirmatively to sustain an action of deceit."

Whether a false representation is material is a question of law. *Caswell* v. *Hunton,* 87 Me. 277. The fraud must be a misrepresentation of a past or present fact and not on a future happening or an expression of opinion. *Carter* v. *Orne,* 112 Me. 365; *Stewart* v. *Winter,* 133 Me. 136; *Shine* v. *Dodge,* 130 Me. 440. Proof of other false and fraudulent representations cannot sustain an action for deceit unless alleged and relied upon. *Carter* v. *Orne,* 112 Me. 365; *Holbrook* v. *Connor,* 60 Me. 578, 581. A false statement, that had no influence on the decision of the party complaining, furnishes no ground for relief. *Mitchell* v. *Mitchell,* 136 Me. 406, 416. The person who claims to have been defrauded must have no reasonable opportunity to verify the truth or falsity of the representation. Where the party has an opportunity to learn the facts he has no right to rely on representations, the truth of which he has equal means of ascertaining or by the exercise of reasonable diligence could have ascertained. One who has opportunity for ascertaining the truth cannot rely on the statement of one who is not a fiduciary. *Clark* v. *Morrill,* 128 Me. 79; *Thompson* v. *Insurance Co.,* 75 Me. 55, 61. Although there are limitations on the foregoing general rules, see *Banking Company* v. *Cunningham,* 103 Me. 455; *Harlow* v. *Perry,* 113 Me. 239, and *Bixler* v. *Wright,* 116 Me. 133, see also 61 A. L. R. 492, 497 (b), the facts of this case do not bring it within such limitations.

Taking the record in the case at bar, assuming the plaintiff's story true, and applying the rules as stated in the cases previously cited herein, we find the following: The declaration alleged as misrepresentations "that the motor truck which the said plaintiff had ordered from the said Joseph Goodwin could not be delivered to the said plaintiff by the said Joseph Goodwin until the 15th day of July, A. D., 1949 * * * the defendant representing to the plaintiff that he could deliver a motor vehicle to the plaintiff on or before the 20th day of June, A. D., 1949, which was sooner than delivery could be made by the said Joseph Goodwin * * * and relying upon the false, fraudulent and deceitful representations made to him by the defendant that the said Joseph Goodwin was not able to deliver such a motor vehicle to him prior to the 15th day of July, A. D., 1949."

The plaintiff testified in answer to the direct question as to why he gave defendant the order: "A. Because he said he could do it right off. I needed the truck." He further testified: "A. He says: Do you want a truck? I says: Yes, I have already ordered one from Joe Goodwin, an Armour yellow one. He says: He can't get that for six or eight weeks, but, he says, I talked with the head Chevrolet man for this whole district this afternoon. He says: If you want to pay a two-hundred-dollar deposit, I will have the truck right off. So I placed the order with him." "Q. In your talk with Mr. Dodge down at your place in Gurnet, whether or not when he talked with you there was any statement made by him as to his being in Joe Goodwin's?" "A. When I says I ordered from Joe Goodwin, he says: I just come from there and, he says, he can't get you a truck for six or eight weeks." "Q. Whether or not Mr. Dodge made any statement as to whether or not your truck was or was not at Joe Goodwin's garage?" "A. Never mentioned it."

There is no "clear and convincing proof" that the plaintiff relied upon anything other than that the defendant could get a truck "right off" or "right away." The proof

that defendant knew his statement to be false was only that he had been at Goodwin's. There is no satisfactory proof that Goodwin could or could not deliver a truck prior to July 15th, except that he did deliver a truck on May 31st. The allegations of misrepresentation differ from the proof offered. The claim that Goodwin could not get a truck for six or eight weeks looks to the future and can be considered either a matter of opinion, "trade talk," or of a future event. The plaintiff also failed to establish that by the exercise of reasonable care he could not have ascertained the falsity of the alleged misrepresentation. The plaintiff lived in the same town with Goodwin and could have easily ascertained the true facts from Goodwin or Goodwin's garage. The plaintiff could have learned the facts before signing the order to the defendant on May 25, 1949 if he had used any diligence, or if he desired to. The plaintiff himself testified that the defendant suggested that the plaintiff call Goodwin on the telephone and "cancel the order." The only excuse the plaintiff offered for not telephoning to Goodwin was that he thought that Goodwin's garage was "closed at that time of day." Then, too, the talk between the plaintiff and defendant related to an order for a three-quarter ton truck, while the truck ordered at Goodwin's garage was a half-ton truck, and the half-ton truck was later delivered by Goodwin and paid for by the plaintiff on May 31, 1949.

A reading of the declaration and the evidence in this case clearly pictures that this controversy is the result of the work of a shrewd salesman who induced a willing and anxious buyer to give an order, because the salesman promised a quicker delivery than a competitor. The buyer may have been intentionally misled, but the buyer made no effort to verify the misleading statement of the seller when he could easily have done so. There was no ground for an action of deceit. The plaintiff had orally asked Goodwin to get him a truck and no deposit with Goodwin was made.

The plaintiff was waiting for word from Goodwin. The defendant Dodge promised a delivery "right away" if an order was signed with him and deposit made. The plaintiff complied, and probably had no other thought than prompt delivery of a necessary truck. An action of deceit does not lie to recover the $200 deposit. Deceit cannot be substituted for assumpsit. *Crossman* v. *Bacon & Robinson,* 119 Me. 105; *Flanders* v. *Cobb,* 88 Me. 488. The plaintiff's form of remedy after rescission, which rescission he may have made, is an action for money had and received in assumpsit. *Mayo* v. *Purington,* 113 Me. 452; *Prest* v. *Farmington,* 117 Me. 348.

The justice of the Superior Court, in finding as he did for the plaintiff in this action, was clearly wrong. His finding was without evidence to support material elements necessary to maintain the action. *Mitchell* v. *Mitchell,* 136 Me. 406, 416, 417; *Ayer* v. *Harris,* 125 Me. 249; *Viele* v. *Curtis,* 116 Me. 328; *Shapiro* v. *Sampson,* 116 Me. 514.

*Exceptions sustained.*