STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-549

REO MARINE, INC.,

     Plaintiff

v.

ORDER

KENNETH JOHNSON

     Defendant and Counterclaim-Plaintiff

v.

REC'D CUMB CLERKS OF
JUN 29 '22 AM11:32

RICHARD REO,

     Additional Party on Counterclaim

Before the court is a motion by Reo Marine Inc. and Richard Reo (referred to collectively as Reo Marine) to strike the counterclaims asserted by Kenneth Johnson. Reo Marine asserts that Johnson's counterclaim should be dismissed based on the doctrine of spoliation – because Johnson had repairs performed before Reo Marine's expert examined the alleged damage which forms the basis of Johnson's counterclaims.

This action arises from the hauling, winter storage, and relaunching by the Reo Marine boatyard of a trawler named "Serenity" that is owned by Johnson.

Reo Marine alleges that although it stored and launched Johnson's trawler in 2019-20, Johnson has not paid Reo Marine for its services and for repairs performed by Reo Marine to the keel of the trawler. Reo Marine further alleges that when it launched the trawler on July 2, 2020, Johnson tendered Reo Marine a check to pay Reo Marine but stopped payment on that check before it cleared.

For his part, Johnson alleges that the damage to the keel of the trawler was the fault of Reo Marine and was caused when the trawler was hauled in November 2019.[1] He further alleges that Richard Reo promised to repair the keel at Reo Marine's expense. Nevertheless, Johnson alleges, when it came time to launch the trawler on July 2, 2020, Reo Marine presented a bill for the keel repairs as well as for the winter storage and refused to launch the trawler until Johnson paid for the keel repairs, as well as for winter storage and certain other costs.

Johnson's counterclaims further allege that the repairs performed by Reo Marine were defective, and he seeks compensation for damage to the trawler due to Reo Marine's alleged failure to adequately repair the damage it had caused. Answer and Amended Counterclaim ¶¶ 46-47. It appears that the damages sought by Johnson on this claim dwarf the dispute between the parties with respect to storage fees and the amount originally billed for repairs, and it is this claim that is the subject of Reo Marine's motion to strike.

Reo Marine's motion is denominated as a motion to strike or in the alternative to dismiss but does not cite any specific rule of civil procedure. The court considers Reo Marine's motion as a request for discovery sanctions. At oral argument on June 23, counsel for both parties confirmed that all the relevant communications between the parties had been provided to the court and agreed on the timeline set forth below.

At the outset, although Reo Marine's motion is addressed to all of Johnson's counterclaims, it really only applies to Johnson's claims that Reo Marine's repairs were defective – an aspect of Johnson's alleged damages on count I of his counterclaims (breach of contract) and the damages sought on count II of his counterclaims (negligence). Counts III, IV, and V of Johnson's counterclaims instead relate to the dispute between the parties as to whether Reo

---

[1] Specifically, by "excessive point loading" in the manner in which the hull was positioned on blocks after being hauled from the water.

2

promised to repair damage allegedly sustained when the trawler was hauled in the fall of 2019 at Reo Marine's expense.

Discussion

The parties agree that the Law Court has not addressed the criteria for applying the doctrine of spoliation in civil cases. Where evidence has been destroyed or otherwise made unavailable by actions of a party to litigation, the First Circuit and several Superior Court decisions have focused on two factors: (1) the degree of prejudice to the non-offending party and (2) the degree of fault of the non-offending party. *See, e.g., Collazo-Santiago v. Toyota Motor Corp.,* 149 F.3d 21, 29 (1st Cir. 1998). The issue of prejudice is afforded more weight, and imposition of a spoliation sanction is designed to prevent the non-offending party from suffering "unfair prejudice." *Sacramona v. Bridgestone/Firestone, Inc.,* 106 F.3d 444, 446 (1st Cir. 1997).

The spoliation issue in this case arises from the fact that, while there was a dispute as to financial responsibility for Reo Marine's repairs, Johnson apparently did not assert that the repairs had also been defective until after the trawler had been hauled in the fall of 2020.[2] Johnson provided an expert report to Reo Marine in the fall of 2020 but that report[3] stated that a more detailed examination with bottom paint removed would be necessary. Counsel and perhaps other representatives of Reo Marine inspected the trawler at that time and photographs were

---

[2] Submissions by Reo Marine suggest that there is a counterargument that any damage to the trawler apparent in the fall of 2020 occurred while it was being operated during the summer of 2020, after it had left Reo Marine.

[3] A copy of that report, as updated in March 2021, is contained in the court's file.

3

taken and are available.[4] However, Johnson's expert report was incomplete at that time, and presumably for that reason Reo Marine did have an expert inspect the trawler in the fall of 2020.

Reo Marine's claim of spoliation arises from the fact that in March of 2021 counsel for Johnson advised counsel for Reo Marine that the bottom paint had been removed and Johnson intended to have repairs performed before the trawler was launched in the spring of 2021. Johnson's counsel suggested that if Reo Marine wanted to have an expert inspect the trawler, that should occur before April 16, 2021. Counsel for Reo Marine immediately wrote back to say that Reo Marine did not consent to having any repairs performed without a court order, noting that the supplemental report from Johnson's expert had not been received.

The next day, however, counsel for Reo Marine modified his position to state that Johnson should not make any repairs to the part of the trawler allegedly damaged and improperly repaired by Reo Marine "between now and June 5th, 2021" unless Reo Marine consented or Johnson obtained leave of court. Letter of March 16, 2021 emailed to counsel for Johnson (Ex. BA3- to Bond affidavit) (emphasis added).

On the same date counsel for Reo Marine emailed counsel for Johnson to propose that Reo Marine expert inspect the trawler on Monday March 22. Counsel for Johnson responded that she had an all-day mediation on March 22 and suggested late afternoon on March 23, 24, or 26. (Ex. BA4 to Bond affidavit).

The record does not contain any further communications between counsel on scheduling an inspection by Reo Marine's expert. It appears instead that counsel for Reo Marine began focusing on other issues between the parties. It was not disputed at the June 23 argument that the

---

[4] At oral argument on June 23, counsel for Reo Marine acknowledged that representatives of Reo Marine may have had some opportunity in the fall of 2020 to inspect the trawler after bottom paint had been removed.

4

final report by Johnson's expert (updated on March 10, 2021) was provided sometime in March 2021.

The repairs that Reo Marine now claims constituted spoliation were performed for Johnson by a person named Mike Kelly in early June of 2021. The exact dates of the repairs are not revealed by the record but there is no evidence that they were performed prior to June 5 – the date set forth in counsel's March 16 letter as the end date of the period in which Johnson was instructed that no repairs should be performed.

With its motion Reo Marine has submitted an affidavit by its proposed expert witness that essentially says that the June 2021 repairs performed by Kelly have eliminated any alleged damage that may have existed. As a result, with one exception,[5] he states that he is unable to offer any opinion as to that damage, as to the cause and effect of that damage, and as to the repairs originally performed by Reo Marine.

On this record, the court cannot grant the sanction requested by Reo Marine. First, Reo Marine was prepared to inspect the trawler on March 25 and offers no explanation of why no inspection was conducted during the period from March 26 to June 5. There is no evidence that Johnson frustrated an inspection during that period. Indeed, counsel for Johnson specifically proposed three dates during the March 25 week. If those dates did not work, all of April and May remained. For whatever reason Reo Marine did not arrange an inspection prior to June 5 (the date its own counsel had specified). As a result, the court cannot find that Reo Marine has suffered "unfair" prejudice in this case. *Sacramona v. Bridgestone/Firestone, Inc.*, 106 F.3d at 446.

---

[5] From an inspection of small section of fiberglass that had been removed during the original Reo Marine repair, Reo Marine's expert is able to offer the opinion that the condition appeared to result from delamination due to fatigue rather than excessive point loading.

Although not necessary to this ruling, the court is also not convinced that the prejudice to Reo Marine is quite as extreme as claimed. Reo Marine has submitted deposition testimony of Mike Kelly that appears to support Reo Marine's claim that the original repairs were properly performed. Reo Marine's expert, as noted above, is able to render an opinion undercutting the claim that there was initial damage to the hull from excessive point loading. Finally, there are photos of the bottom of the trawler from the fall of 2020. Representatives of Reo Marine inspected the trawler at that time, when Reo Marine was aware of the general theory of Johnson's expert from his October 2020 report. The court suspects those photos provide some evidence bearing on the defective repair claim.

Because the court has not found unfair prejudice, it does not have to consider the allegedly offending party's degree of fault. Given the evidence that Reo Marine was afforded more than two months in which to arrange for an inspection before the repairs were performed, it is difficult for the court to conclude that Johnson was an "offending party." Courtesy would perhaps have called for Johnson to have informed counsel for Reo when the repairs were actually going to take place, but that does not justify the sanction requested by Reo Marine in this case.

The entry shall be:

> The motion by Reo Marine and Richard Reo to strike Kenneth Johnson's counterclaims is denied. The Clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

DATED: June 27 , 2022

Thomas D. Warren
Active Retired Justice, Superior Court

Entered on the Docket: 06/30/22
Me/

Plaintiff REO Marine and Richard Reo-
Christopher Bond, Esq.
Defendant-James Haddow, Esq.

6

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-20-549

REO MARINE INC.,

      Plaintiff

v.

      ORDER

KENNETH JOHNSON,

      Defendant

REC'D CUMB CLERKS OFC
JUL 20 '21 AM8:33

v.

RICHARD REO,

      Third-Party Defendant

Before the court are four motions: (1) a motion by plaintiff REO Marine Inc. and third-party defendant Richard Reo to dismiss counts II, IV, and V of defendant Kenneth Johnson's counterclaim and third party complaint; (2) REO Marine's motion for summary judgment on count II of its complaint against Johnson; (3) REO Marine's motion for an attachment on Count II of its complaint; and (4) Johnson's cross-motion for summary judgment on count II of REO Marine's complaint.

This action arises from the hauling, winter storage, and relaunching by the REO Marine boatyard of a trawler named "Serenity" that is owned by Johnson.

REO Marine alleges that although it stored and launched Johnson's trawler in 2019-20, Johnson has not paid REO Marine for its services and for repairs to the keel of the trawler. REO Marine further alleges that when it launched the trawler on July 2, 2020, Johnson tendered REO Marine a check for $ 6,853.96 but stopped payment on that check before it cleared.

For his part, Johnson alleges that the damage to the keel of the trawler was the fault of REO Marine and was caused when the trawler was hauled in November 2019. He further alleges that Richard Reo promised to repair the keel at REO Marine's expense. Nevertheless, Johnson alleges, when it came time to launch the trawler on July 2, 2020, Reo presented a bill for the keel repairs as well as for the winter storage and refused to launch the trawler until Johnson paid for the keel repairs, as well as for winter storage and certain other costs.

REO Marine is seeking the $ 6,853.96 which it contends Johnson owed as of July 2, 2020 plus additional charges, costs and interest incurred since July 2, 2020, amounting to a total of $ 9,471.81. Johnson apparently does not contest that he owes $ 3,408.38 for winter storage but disputes that he owes anything more.[1]

Motion to Dismiss

At the outset, although Richard Reo has been named as a third-party defendant in his individual capacity, it is not clear that Johnson's claims against Reo are proper third party claims. M.R.Civ.P. 14(a) allows a defendant to assert claims as a third party plaintiff against a person "who is or may be liable to such third party plaintiff for all or part of the plaintiff's claim against the third party plaintiff." Some or all of Johnson's claims against Reo individually are not based on the theory that Reo should be found liable to Johnson if Johnson is found liable to REO Marine. Instead, Johnson is asserting claims against Reo that do not depend on whether Johnson is found liable to REO Marine. Rather than a third party defendant, therefore, Reo is more properly considered to be an additional party on Johnson's counterclaim pursuant to M.R.Civ.P. 13(h).

---

[1] The summary judgment record reveals that Johnson has tendered $ 3,408.38 to REO Marine but that was not accepted by REO Marine. Johnson Statement of Additional Material Facts (SAMF) dated March 2, 2021 ¶ 42; REO Marine Reply Statement of Material Facts (Reply SMF) dated March 9, 2021 ¶ 42; February 9, 2021 Richard Reo affidavit ¶ 65.

2

However, the court sees no prejudice to Reo from the mischaracterization of the claims against him as third-party claims and would permit Johnson to replead if the issue had been raised by Reo.

Johnson's counterclaims assert five counts against REO Marine: breach of contract (Count I), negligence (Count II), violation of the Unfair Trade Practices Act (Count III), fraud (Count IV), and negligent misrepresentation (Count V). Johnson's claims of fraud and negligent misrepresentation (Counts IV and V) are also brought against Reo in his individual capacity. REO Marine and Reo individually are seeking to dismiss Counts II, IV, and V on the ground that those claims are barred by the economic loss doctrine and are alternatively seeking to dismiss Count IV on the ground that Johnson has failed to allege an actionable fraud claim.

For purposes of a motion to dismiss, the material allegations of the counterclaims must be taken as admitted. *Ramsey v. Baxter Title Co.*, 2012 ME 113 ¶ 2, 54 A.3d 710. The counterclaims must be read in the light most favorable to Johnson to determine if they sets forth elements of a cause of action or alleges facts that would entitle Johnson to relief pursuant to some legal theory. *Bisson v. Hannaford Bros. Co., Inc.*, 2006 ME 131 ¶ 2, 909 A.2d 1010. Dismissal is appropriate only when it appears beyond doubt that the Johnson would not be entitled to relief under any set of facts that he might prove in support of his claim. *Moody v. State Liquor & Lottery Commission*, 2004 ME 20 ¶ 7, 843 A.2d 43. However, Johnson may not proceed if his counterclaims fail to allege essential elements of the cause of action. *See Potter, Prescott, Jamieson & Nelson P.A. v. Campbell*, 1998 ME 70 ¶¶ 6-7, 708 A.2d 283.

As set forth above, REO Marine and Reo argue that Counts II, IV and V of the Johnson's counterclaims are barred by economic loss doctrine, which set forth by the Law Court in *Oceanside*

3

*at Pine Point Condominium Owners Assoc. v. Peachtree Doors, Inc.*, 659 A.2d 267, 270 (Me. 1995).

Under the economic loss doctrine, where a claimant is complaining about a defective product and the sole damage is to the product itself, the claimant is limited to his remedies for breach of contract and breach of warranty and is not entitled to assert tort claims in addition to contractual claims. The doctrine has also been applied to service contracts to preclude tort claims where the party to a service contract is complaining about damage to property for which the party has a remedy for breach of contract and/or breach of warranty. *See Maine Rubber International v. Environmental Management Group. Inc.*, 298 F.Supp.2d 133, 136-37 (D.Me. 2004).[2]

Johnson is contending that REO Marine is liable for causing damage to the keel of his vessel, which could conceivably fall within an express or implied warranty under a winter storage contract between Johnson and REO Marine. However, there does not appear to have been any written winter storage contract between REO Marine and Johnson, and at the pleading stage, the court is not prepared to conclude that Johnson's tort claims are barred by the economic loss doctrine. Both parties are alleging that some form of contract existed, but the terms of that contract are uncertain. The economic loss doctrine may apply in this case, but whether that is true cannot be determined on a motion to dismiss.

REO Marine and Reo contend in the alternative that Johnson's count IV, alleging fraud, fails to state a claim upon which relief may be granted. Primarily they contend a claim of fraudulent misrepresentation cannot be based on promises of future action – such as Reo's alleged promise

---

[2] This court has previously found that the economic loss doctrine applies to losses claimed by a boat owner against a boatyard that was alleged to have negligently damaged a boat stored for the winter. Other Superior Court justices, however, have reached different conclusions as to whether the economic loss doctrine applies to service contracts. To the court's knowledge, the Law Court has not addressed the issue.

that REO Marine would repair the damage to the trawler's keel at its expense. Plaintiff's Motion to Dismiss dated February 1, 2021 at 7-8, citing a line of cases culminating in *Coffin v. Dodge,* 146 Me. 3, 76 A.2d 541 (1950).

Since the cases cited by REO Marine, however, the Law Court has adopted the view expressed in Restatement (Second) of Torts §§ 525 and 530(1) that "[a] representation of the maker's own intention to do or not to do a particular thing is fraudulent if he does not have that intention." *See Cianchette v. Cianchette,* 2019 ME 87 ¶¶ 22-26, 209 A.3d 745. Johnson has also alleged that he relied on the alleged statement by Reo that the keel repairs would be performed at REO Marine's expense. Accordingly, at the pleading stage, Johnson has stated a cognizable claim of fraud.

Whether Johnson can prevail on that claim depends on whether he can prove by clear and convincing evidence that Richard Reo represented that the keel repairs would be performed at REO Marine's expense, that when Reo made that representation, he had no intention of performing the repairs at REO Marine's expense, that Reo made that representation to induce reliance by Johnson, and that Johnson justifiably relied on that representation. Those are issues that cannot be decided on a motion to dismiss.

Cross-Motions for Summary Judgment

The parties have filed cross-motions for summary judgment on count II of REO Marine's complaint, which seeks to hold Johnson liable on the grounds that because he stopped payment on his $ 6,853.96 check, he became liable for a dishonored check under 14 M.R.S. § 6071(1).

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary

5

judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport*, 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services*, 1999 ME 158 ¶ 3, 740 A.2d 560.

Section 6071(1) of Title 14 provides as follows:

> In any action against a person liable for a dishonored check, the holder may recover the amount of the check, the court costs and processing charges incurred by the holder, plus interest at the rate of 12% per annum from the date of dishonor if
>
> (A) The holder gives notice pursuant to section 6073 for payment of the check; and
>
> (B) The person liable fails to tender the amount of the check, plus bank fees and mailing costs, within 10 days of receiving the notice set forth in section 6073.

Perhaps explaining the amount of effort the parties have expended on this case given the amounts involved, if a person who is liable does not pay the amount of the check, the court may award reasonable attorney's fees to the prevailing party. 14 M.R.S § 6073(2).

Although the parties have offered 136 statements of purportedly material facts on their cross-motions, the court finds that the issues can be distilled to a manageable number of undisputed facts and disputed facts.

The undisputed facts are the following: Before Johnson's trawler was launched, REO Marine sought payment in the amount of $ 6,853.96, which included an amount for the keel

6

repairs. Johnson wrote a check for that amount and gave it to Richard Reo. Johnson then stopped payment on that check. REO Marine deposited the check but it was returned with the notation "Stop Payment."[3] Counsel for REO Marine then sent a notice to Johnson under 14 M.R.S. § 6073 instructing Johnson to make payment of $ 6,853.96 plus bank and mailing costs of $ 25.00 within 10 days, and Johnson did not do so. REO Marine Statement of Material Facts filed on February 9, 2021 ¶¶11-12, 15, 19, 22, 28-30.[4]

The material facts that are in dispute are the following: (1) whether the damage to the keel was caused by REO Marine when it hauled the trawler in November 2019; (2) whether Reo acknowledged in November 2019 that the keel damage was his fault and promised to repair it at no expense to Johnson; (3) whether Reo refused to launch the trawler on July 2, 2020 unless Johnson paid the $ 6,583.96 that REO Marine sought, including the keel repair cost that Reo had allegedly promised to perform at REO Marine's expense; and (4) whether Johnson, in tendering the $ 6,583.96 check to Reo, stated that he was doing so under protest. Johnson SAMF ¶¶ 9-11, 14-15, 33, 36. Johnson has offered evidence as to these issues, which is disputed by REO Marine.[5]

REO Marine argues that Johnson's $ 6,583.96 check constituted a negotiable instrument which constituted an unconditional promise to pay and that because Johnson stopped payment on

---

[3] A copy of the check, as returned, is contained in the summary judgment record as Exhibit E to the February 9, 2021 affidavit of Richard Reo.

[4] Johnson admitted ¶¶ 15 and 28-29 of REO Marine's SMF. Although Johnson qualified ¶¶ 11-12, 19, 22, and 30 of REO Marine's SMF, none of those qualifications controvert the essential facts recited above.

[5] The parties also dispute whether Johnson had the funds in his bank account to cover the $ 6,583.96 check if he had not stopped payment. REO Marine has offered evidence that the balance in the account would not have been sufficient. Johnson has offered evidence that his checking account is linked to his savings account so that funds are transferred from his savings account to cover any excess charges in his checking account.

the check and subsequently declined to make payment after receiving notice under 14 M.R.S. § 6073, REO Marine is entitled to summary judgment against Johnson under 14 M.R.S. § 6071(1). As the court sees it, there are several problems with that argument.

The first is that section 6071(1) applies to a "dishonored check," but it is not clear that a check on which payment has been stopped is a "dishonored" check within the meaning of section 6071(1). The original version of section 1071 specifically applied to checks that were dishonored for lack of funds or credit to pay the check or because the maker of the check had no account with the bank on which it was drawn. P.L. 1989, ch. 357. The Legislature amended the statute in 1995 to refer to dishonored checks generally, but there is no legislative history on whether that amendment was intended to apply to checks on which payment had been stopped.

There is some reason to question whether that was the intent because 11 M.R.S. § 4-403(1) expressly provides that a bank account holder may stop payment on checks drawn to that customer's account. The right to stop payment would not be worth much if, any time an account holder chooses to stop payment, the account holder then automatically becomes subject to liability under section 6071(1) for dishonoring a check.

Perhaps more importantly, in addition to the right of account holders to stop payment on a check, the UCC specifically provides that, unless a claimant is a holder in due course, negotiable instruments are subject to defenses that may be raised against the party seeking to enforce the instrument. 11 M.R.S. § 3-1308(2). The defenses that may be raised include any defenses that would be available if the person seeking to enforce the instrument were enforcing a right to payment under a contract, and the right to enforce a negotiable instrument is also subject to any claims in recoupment. 11 M.R.S. § 3-1305(1)(b). *See Maine Family Federal Credit Union v. Sun Life Assurance Co.*, 1999 ME 43 ¶ 13, 727 A.2d 335. Accordingly, Johnson is entitled to raise the

8

defenses that the keel damage was caused by REO Marine and that Richard Reo promised to repair the keel at no cost to Johnson. On those issues Johnson has offered sufficient evidence to raise disputed issues of fact, and it follows that REO Marine's motion for summary judgment on count II of the complaint must be denied.

Citing *Champagne v. Phenix Title Services LLC*, 2016 Me. Super. LEXIS 20 (Superior Ct. Cumberland County, January 27, 2016) (Mills, J.), Johnson argues that because he stopped payment, 14 M.R.S.§ 6071 is inapplicable and that therefore he is entitled to summary judgment on count II of REO Marine's complaint. In response, REO Marine argues that this is only true if a "if a stop payment order is not wrongful." REO Marine Reply on Motion for Summary Judgment at 9. REO Marine goes on to argue that the facts demonstrate that Johnson's stop payment order was wrongful because he did not have sufficient funds in his account to pay the check.

As discussed above, there is a disputed issue of fact as to whether the check would have cleared absent the stop payment order. There is also no law in Maine of which the court is ware that defines when a stop payment order is "wrongful." At least one other state has enacted a statute providing monetary penalties if a stop payment order is issued "without valid legal cause," *see* Indiana Code § 26-2-7-4(1), but it is not evident to the court that 14 M.R.S. § 6071(1) is intended to achieve the same result. At this time, because there are disputed issues of fact, the court will reserve decision on whether and under what circumstances 14 M.R.S. § 6071(1) may provide a remedy to REO Marine in this case and will deny Johnson's cross-motion for summary judgment on Count II of REO Marine's complaint.

Motion for Attachment

REO Marine's motion for attachment is also based on its claim against Johnson under 14 M.R.S. § 6071(1). In this connection, REO Marine is not seeking an attachment against Johnson in the amount of $ 9,471.81 but is seeking an attachment against the trawler and an order allowing REO Marine to take possession of the trawler.

There are statutory provisions for liens against vessels "to secure the payment of debts contracted and advances made for labor and materials necessary for their repair." 10 M.R.S. §§ 3851-63. As far as the court is aware, there are no reported cases under those statutory provisions. While those statutes appear to provide that if a lien for debts contracted and labor and materials necessary for repair remains unpaid, a court may order that the vessel be sold at auction to satisfy the lien. 10 M.R.S. § 3863. However, the court can find no authority to allow REO Marine to take possession of the trawler. If anyone is entitled to take possession of the trawler, it would be the sheriff when enforcing the lien. *See* 10 M.R.S. §§ 3853.

In any event, the court has reviewed the submissions of the parties and does not find that, on this record, it is more likely than not that REO Marine will prevail against Johnson for more than the $ 3,408.38 which Johnson has tendered and which has been refused by REO Marine. On various issues – including whether the damage to the trawler keel was caused by REO Marine, whether Richard Reo promised to repair that damage at no cost to Johnson, whether Reo later insisted on payment for those repairs before he would allow the trawler to be launched, and on whether Johnson stated that his $ 6,583.96 check was provided under protest – the affidavits of the parties are squarely at odds.

Accordingly, REO Marine's motion for attachment and possession of the trawler is denied.

10

The entry shall be:

1. The motion by REO Marine Inc. and Richard Reo to dismiss counts II, IV, and V of Kenneth Johnson's counterclaims and third-party claims is denied.

2. REO Marine Inc.'s motion for summary judgment on count II of REO Marine's complaint is denied.

3. Kenneth Johnson cross-motion for summary judgment on count II of REO Marine's complaint is also denied.

4. REO Marine's motion for an attachment and possession of the trawler is denied.

5. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: July 19, 2021

Thomas D. Warren
Justice, Superior Court

11