## MILES F. BIXLER *vs.* PERLEY A. WRIGHT.

### Somerset.    Opinion April 12, 1917.

*Necessary proof in an action to recover price of goods bargained and sold.    Form of action if party ordering refuses to accept same.    Rule of law as to questions not raised at trial being considered on exceptions.    Rule as to negligence defeating the defense of fraud.    Rule where fraudulent representations are used.*

1.  One who is fraudulently misled as to the contents of a paper which he signs without reading is not estopped by his negligence from setting up the fraud in an action between the original parties.
2.  The evidence in this case would warrant a jury in finding that the defendant's signature to the contract in suit was procured by the fraud of the plaintiff's agent.

Action of assumpsit to recover $192.00 for goods claimed to have been sold defendant under a written contract.   Defendant filed a plea of general issue, and also brief statement alleging that the contract on which plaintiff had declared was procured from the defendant by misrepresentation and fraud of plaintiff's agent and that said

contract was therefore void. At the close of testimony, verdict was directed for plaintiff by Justice presiding, to which ruling defendant filed exceptions. It being further stipulated by the court, all parties agreeing thereto, that in case the exceptions should be sustained, judgment should be entered for defendant. Exceptions sustained. Judgment ordered for defendant.

Case stated in opinion.

*O. H. Drake*, for plaintiff.

*Manson & Coolidge*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, MADIGAN, JJ.

SAVAGE, C. J. Action to recover the price of certain goods sold to the defendant in accordance with a written order signed by him. At the conclusion of the evidence, the presiding Justice directed a verdict for the plaintiff, and the defendant excepted. It was stipulated by the parties that if the exceptions are sustained, judgment shall be entered for the defendant.

It is evident that the action is misconceived. The goods were shipped to the defendant, but were never accepted by him. In such a case the seller's remedy is not a suit for the price, but a special action for breach of the implied contract to receive and accept. To maintain an action for the price, actual acceptance must be shown. *Tufts* v. *Grewer*, 83 Maine, 407; *Greenleaf* v. *Gallagher*, 93 Maine, 549. But this point does not appear to have been made at the trial, and is not made in argument before this court. It is well settled that a question not raised at the trial will not be considered on exceptions. *Stockwell* v. *Craig*, 20 Maine, 578; *Withee* v. Brooks, 65 Maine, 14; *Verona* v. *Bridges*, 98 Maine, 491; *Coan* v. *Auburn Water Comrs.*, 109 Maine, 311.

The defense offered is that the defendant's signature to the order, under which the goods were shipped was procured by fraud. The defendant says that he signed the order without reading it. He does not controvert the well settled rule that in the absence of fraud or misrepresentation, one who signs a contract or other written instrument without reading it is presumed to know its contents. But he says that his signature to this order was procured by the fraud and misrepresentation of the agent.

A verdict having been directed for the plaintiff, the only question for this court to determine is whether there was any evidence that would have warranted the jury in finding that the plaintiff's signature was induced by fraud. *Johnson* v. *N. Y., N. H. & H. R. R.*, 111 Maine, 263. Fraud is a mixed question of law and fact. It cannot be taken from the jury when there is evidence that warrants an affirmative finding.

It is true in a case like this one that the defendant is under the burden of substantiating the charge of fraud by clear and convincing proof. *Strout* v. *Lewis*, 104 Maine, 65. In this case the facts are undisputed. No attempt was made to contradict the defendant's testimony, and we can discover no reason why the jury might not have been warranted in believing it.

The defendant's story is this. He is the proprietor of a country store in a small village. He was approached in his store by the plaintiff's agent, James, who introduced himself as a brother Odd Fellow, and said that he had been sent to the defendant by one Raynes, a near-by neighbor, which latter statement was not true. The agent said that he had some jewelry that he was putting in on consignment, and then showed the defendant his goods. Then, to use the defendant's language, the agent "told me on these goods that I would pay for the goods every two months, thirty two dollars, providing I had sold that amount of jewelry, and if not, if I had sold five dollars worth or ten dollars worth of jewelry, that I could send that amount in to the company and tell them that that was all that was sold of jewelry at the present time, and that would be all right. And at that time, as I remember, it was growing a little dark, although I am not positive that I had my lights on, but there was a number of customers in my store, and of course, I kept dodging out to wait on them, and then when I went to sign this contract, he was standing, well, as my office stands, I stood here, and this store is out like that (illustrating), and there is a little kind of a place here (indicating), to come into the office, rather narrow, and I, of course, stepped out like this to look through my store to see who was waiting for me; Mr. James stood on the further side here, then handed out this card, not a card, but a pad like, holds his hands like this, I takes the other end, takes the corner of it and commenced to sign my name on it; didn't think no more of it; and that is about the way he got my signature on the contract." The defendant further says that the

agent had told him that at the end of the year they would take back all the goods not sold. The defendant did not read the contract before signing. James was a stranger to him. And the defendant before this time had never heard of the Continental Jewelry Company, under which name the plaintiff did business. These are all of the material facts concerning the signing.

The paper which the defendant signed was not an order for jewelry on consignment, but was an unconditional order for the purchase of jewelry, amounting to $192. At the top of the paper in capital letters were the words,—"Positively no goods consigned,"—"Read this order carefully." Then followed a price list of about 90 articles; then the terms of payment; then an agreement by the plaintiff to repurchase at the end of the year all goods paid for and remaining unsold, in case the purchaser had sold less than half during the year; then just above the signature, the sentence, "We have read this order and find same complete and satisfactory."

That the conduct of the agent was deliberately, intentionally fraudulent a jury would be authorized to find. The agent's talk was all about the details of a consignment. The defendant had a right to understand that the written contract embodied the substance of the oral negotiation. But the plaintiff contends that even so it was such negligence and folly on the part of the defendant to sign without reading a paper which he had the opportunity to read that the law will not relieve him from the consequences of his foolishness.

Whether the negligence of the defrauded party will defeat the defense of fraud has been much debated, and courts have come to different conclusions. The question has arisen more frequently in actions for deceit. And many courts have held in effect that when the party defrauded might by the exercise of reasonable care have ascertained the truth, he had no right to rely upon the representations of the other. But in the case of fraudulent misrepresentations the rule is settled otherwise in this state. In *Eastern Trust & Banking Company* v. *Cunningham*, 103 Maine, 455, we said, "If one intentionally misrepresents to another facts particularly within his own knowledge, with an intent that the other shall act upon them, and he does so act, he cannot afterwards excuse himself by saying, 'You were foolish to believe me.' It does not lie in his mouth to say that

the one trusting him was negligent." This rule was affirmed in *Harlow* v. *Perry*, 113 Maine, 239. The rule is supported by numerous cases cited in note, 37 L. R. A., 593.

The more limited question whether one who signs a paper without reading it is so far concluded that he cannot set up that his signature was induced by a fraudulent misrepresentation as to its contents has also received varying answers. There is a general accord that a paper signed by one who cannot read or write may be defeated by proof of such misrepresentation. So generally when the paper is misread to the person who then signs without reading. It is also generally agreed that a negotiable promissory note in the hands of an innocent holder cannot be so defeated. And the courts in a few states, notably, Indiana and Iowa, hold squarely that even between the original parties if one who can read and write signs a paper without reading it, it is such negligence that he cannot be permitted to say that its contents were misrepresented to him. But we think the weight of authority is to the contrary.

The plaintiff relies upon *Maine Mutual Marine Ins. Co.* v. *Hodgkins*, 66 Maine, 109, the language of which case certainly does support the principle for which he contends. But that case was a suit on a promissory note, given pursuant to a previous contract signed without reading. The misrepresentations relied upon to show fraud appear not to have been so much misstatements of the contents of the instrument, as of its legal effect. And the court said, "It is not fraud, if one misapprehends, and misapprehending, misstates the legal effect of an instrument." We have no occasion to criticise this conclusion.

In *Great Northern Mfg. Co.* v. *Brown*, 113 Maine, 51, the defendant signed without reading a contract to purchase goods, when he had reason to suppose from the previous conduct of the seller, and the seller's agent, that he was to receive them free. He had an opportunity to read the paper before signing. He may have been negligent in that he did not read. The court held that his signature was procured by fraud, and sustained his defense. It is true that the fraudulent artifices in that case were more numerous and more elaborate than in this. But the principle established in that case applies to this one. It is that in a case between the original parties, when one is fraudulently misled as to the contents of a paper which he signs without reading he is not estopped by his negligence from setting up the fraud, as he might be after third parties had acted

upon it. *Carlisle & Co.* v. *Bragg*, Eng. L. R. (1911) 1 K. B. Div. 489. This view is supported, we think, by the greater weight of authority and by the better reason.

In the first place it must be held that the presentation of the paper for the defendant's signature was itself a representation that its contents were the same as agreed upon in the oral negotiation. As was said in *Tremblay* v. *Ricard*, 130 Mass., 259,—"The jury may well have found that the production of the writing at that time was in itself an affirmation on the part of the defendant (plaintiff here) that its terms did not differ from the terms of sale agreed upon. Fraud may be proved from the acts and conduct of a party quite as effectively as from his declarations. And any act falsely intended to induce a party to believe in the existence of some other material fact, and having the effect of producing such effect to his injury is a fraud."

"There is ample authority", said the court in *Weil* v. *Quidnick Mfg. Co.*, 33 R. I., 58, a case apparently on all fours with this one, "that as between the parties to a written contract where one party is induced by the false statements of the other to sign the same, he is not bound thereby, and may defend against the contract on the ground of fraud, even though he was negligent in signing without reading it. . . . . When he undertook to write the order he was bound to write it according to the agreement, and if it did not embody the agreement, and was signed by inadvertence or negligence that would not preclude the defendant from avoiding it on the ground of fraud.

In *Freedley* v. *French*, 154 Mass., 339, it was said, "It is true that she (the party signing without reading) was required to use reasonable care in acquainting herself with the contents of the paper. But this rule is subject to the condition that no fraud was practiced upon her for the purpose of procuring her signature." And holding that the question of negligence was for the jury, the court said, "It can hardly be said as a matter of law, that a party is guilty of negligence who signs a paper relying upon the representations as to its contents and effect made by the party presenting it, and without himself examining it. . . . . It was concealment if he stated the contents as other than they really were."

In New Jersey, it has been held that while signing without reading generally binds, there is an exception to the rule, and that when a signature to a contract has been procured by fraud or imposition

practiced upon the signer with intent to deceive him as to the import of the paper he signs, he may attack it for fraud, although he might have discovered the fraud perpetrated upon him by reading the paper and he was guilty of negligence in not doing so. *Dunston Lithograph Co.* v. *Borgo,* 84 N. J. L., 623; *Alexander* v. *Brogley,* 62 N. J. L., 584.

The case of *Western Mfg. Co.* v. *Colton,* 126 Ky., 749, was in all essential respects like this one, even to the fact that the contract as signed was for the sale, instead of the consignment, of jewelry. The court said that it was immaterial whether the contract was misread, or was written differently. In either case the act of obtaining the signature was a fraud, and that the agent's "baseness is not offset in law by the mere negligence of the other party who relied on what he had no reason to doubt", and that even gross negligence does "not preclude an inquiry into the truth as to whether he was in fact misled by the stratagem of his adversary." The court remarking that some of the earlier cases enforced a harsher doctrine noted that the trend of the courts is to liberalize the defense in this class of cases.

In *Linington* v. *Strong,* 107 Ill., 295, the court said that "the doctrine is well settled that as a rule, a party guilty of fraudulent conduct shall not be allowed to cry 'negligence' as against his own deliberate fraud. . . . While the law does require of all parties the exercise of reasonable care . . . . there is a certain limitation of this rule, and as between the original parties to the transaction we consider that where it appears that one party has been guilty of an intentional and deliberate fraud . . . . he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered, had the party whom he deceived exercised reasonable diligence and care."

To the same effect are *Eggleston* v. *Advance Threshing Co.,* 96 Minn., 241; *Maxfield* v. *Schwartz,* 45 Minn., 150; *McBride* v. *Macon Telegraph Pub. Co.,* 102 Ga., 422; *American Fine Art Co.* v. *Reeves Pulley Co.,* 127 Fed., 808; *Albany City Savings Inst.* v. *Burdick,* 87 N. Y., 40; *Wenzel* v. *Shulz,* 78 Calif., 221. We have limited our citations on the question of negligence to cases of signing writings without reading them.

The law dislikes negligence. It seeks properly to make the enforcement of men's rights depend in very considerable degree upon whether they have been negligent in conserving and protecting their rights.

But the law abhors fraud.  And when it comes to an issue whether fraud shall prevail or negligence, it would seem that a court of justice is quite as much bound to stamp out fraud as it is to foster reasonable care.

We think the doctrine of the cases cited is sound, and we affirm it. The conclusion follows that it was error to take this case from the jury by directing a verdict for the plaintiff, and the exceptions must be sustained.

In accordance with the stipulation of the parties, the mandate will be,

*Judgment for the defendant.*