CECIL F. CLARK *vs*. ERNEST L. MORRILL.

York.    Opinion April 1, 1929.

80

*Emery & Waterhouse,* for plaintiff.
*Willard & Ford,* for defendant.

SITTING: WILSON, C. J., DEASY, STURGIS, BARNES, JJ., PHILBROOK, A. R. J.

WILSON, C. J.   An action of deceit.  The allegations are that the defendant on August 20, 1920, as an inducement for the plaintiff to purchase of the defendant four hundred and ninety-eight shares of the capital stock of the Crescent Towing Line, a corporation doing a towing business chiefly in New York Harbor, falsely represented to the plaintiff that the stock was of great value; that the company "was doing a thriving and profitable business" and that the four hundred and ninety-eight shares were worth a large amount of money, to wit: seven thousand dollars.

The plaintiff further alleged that he was induced to convey

certain real estate to the defendant in exchange for said four hundred and ninety-eight shares of stock by reason of the false representations of the defendant that the Crescent Towing Line was a solvent corporation doing a "healthy and profitable business"; and that as a further inducement the defendant exhibited to the plaintiff the books of account of the company which showed a "healthy financial condition" which representation and books the plaintiff relied on, but that said representations were false and the books of the company exhibited to the plaintiff did not contain a true statement of the financial condition of the company, but "were grossly wrong and intended to deceive innocent purchasers and especially the plaintiff."

The jury awarded a verdict for the plaintiff in the sum of seven thousand dollars. The case comes to this court on a general motion for a new trial and on exceptions to the admission and exclusion of certain evidence, and on motion based on newly discovered evidence.

It is unnecessary to consider the bill of exceptions or its form, of which the defendant complains, or the motion based on the newly discovered evidence, as the general motion must be sustained. The jury must have failed to appreciate the nature of the allegations and the issues raised thereby and the burden resting on the plaintiff in such cases.

So far as representations as to value of the stock are concerned, if such were made, the law is well settled in this state "that the statements of the vendor as to value, or the price which he has given or been offered for it, are so commonly made by those having property to sell in order to enhance its value that any purchaser who confides in them is considered too careless of his own interests to be entitled to relief even if the statements are false and intended to deceive." *Palmer* v. *Bell*, 85 Me., 352; *Long* v. *Woodman*, 58 Me., 49, 52; *Bishop* v. *Small*, 63 Me., 12; *Bourn* v. *Davis*, 76 Me., 223; *Braley* v. *Powers*, 92 Me., 203.

An action of deceit can not be based on every false representation or statement. To sustain an action, the statement must be as to matters of fact substantially affecting the subject matter and not as to matters of opinion, judgment or expectation. *Martin* v. *Jordan*, 60 Me., 531.

As to the allegation that the Crescent Towing Line was solvent and doing a profitable business, if the evidence sustained the allegation and the plaintiff had no opportunity to investigate; it was false; and the defendant knew it was false and made it intending to deceive, it might be actionable, *Chellis* v. *Cole*, 116 Me., 283, but the evidence does not sustain this allegation.

While there was a conflict of testimony between the plaintiff and the defendant as to what was said preliminary to the exchange of the stock for real estate, we must assume the jury accepted the plaintiff's story as true. His only testimony, however, was that sometime in July, 1920, at a conference between them the defendant said: "That the property was bothering him out there a lot and he wanted someone interested with him in taking care of it; that if it was well to continue operating to go on with it, and if not liquidate. We then looked over the accounts which he discounted certain of those items and on his own figures gave me a slip showing that if we liquidated the corporation one-third of that would be worth seventy-six hundred dollars."

We have searched the record for other statements by the defendant supporting this or the other allegations but find none.

Surely there is nothing in the above statement to the effect that the company was doing a profitable business or was in a healthy financial condition. Rather, doubt is expressed. Such a statement couched in the plaintiff's own language should have put any man experienced in business affairs, as the evidence shows the plaintiff was, on his guard. Not only was this statement suggestive of doubt as to the success of the business, but for nearly six months prior thereto the plaintiff had been in touch with the business, had examined on several occasions the books of the company at the suggestion of the defendant, and seen its principal assets, consisting of boats; had installed a new system of keeping the accounts of the business and prepared a form for making monthly reports of the status of the business with a trial balance which was furnished the plaintiff each month, and all for the purpose of more clearly disclosing, by the books of account and by monthly reports, the true state of the business.

It does not appear from the testimony that the defendant had any better information on which to base an opinion of the result of

liquidation than the plaintiff. At least the means of obtaining information as to the condition of the business and the probable result of liquidation was at all times open to the plaintiff.

"In cases where misrepresentations are made in reference to material facts affecting the value of the property and not merely expressions of opinion or judgment, the law holds that the person to whom such representations are made has no right to rely on them, if the facts are within his observation, or if he has equal means of knowing the truth, or by the use of reasonable diligence might have ascertained it and is not induced to forego further inquiry which he otherwise would have made." *Palmer* v. *Bell*, supra, p. 353.

"The common law affords to every one reasonable protection against fraud in dealing, but it does not go to the romantic length of giving indemnity against the consequences of indolence and folly or a careless indifference to the ordinary and accessible means of information." 2 Kent Com., *485.

There is no evidence that the books did not correctly disclose the nature of the assets and the extent of the liabilities, and the daily transactions of the company. The only evidence in the case as to the value of the boats is that in July, 1920, they would have sold for sufficient to realize nearly if not quite the amount the plaintiff stated the defendant estimated in arriving at the liquidation value of the stock; but within a year the value of shipping fell off in case of old boats, as one of these was, to a small percentage of their value in 1919 and the first half of 1920. Be that as it may, full opportunity to ascertain the value of the assets was open to the plaintiff. He had free access to the books, could ascertain for himself by inquiry the value of the boats. He must be held at fault if he did not, under the circumstances, avail himself of the means at hand of informing himself before purchasing.

There were no fiduciary relations between him and the defendant. They may have been business associates and friends. In this transaction they were dealing as strangers. *Hoxie* v. *Small*, 86 Me., 23, 27-8.

The only other allegation of deceit or fraud is that the defendant exhibited to the plaintiff books of account which were false and known to be false by the defendant and were shown to the

plaintiff for the purpose of deceiving him and inducing him to purchase the stock in question.

Neither does this allegation appear to be sustained by the plaintiff's evidence. The books were not exhibited to the plaintiff by the defendant in the sense in which the language of the declaration charges. According to the plaintiff's testimony, before any proposal of offer of sale of stock was made, the defendant asked the plaintiff to examine the accounts of the company with a view to reporting on its condition and making such changes in the system of bookkeeping as the plaintiff deemed necessary. This he did, following an audit by an independent auditing concern, and blanks for monthly reports were prepared by him; and from February, 1920, until July, at least, monthly reports were made in accordance with the plaintiff's recommendation, which if not made directly to the plaintiff were turned over to him by the defendant. The testimony shows that it was in connection with a monthly report and not upon the books that the estimate of the results of liquidation was made.

The plaintiff evidently had sufficient knowledge of accounting so that the defendant requested him, and he undertook, to make an examination of the books, and the officers of the company accepted his recommendations as to methods, and employed a bookkeeper at his suggestion. There is no evidence that anything was concealed from him. In fact there is no evidence in the record that the books were intentionally falsified, nor that they did not contain a true record of the daily transactions of the company. The evidence is to the contrary.

An analysis of the monthly reports forwarded should have shown him that the liquidation value of the stock depended entirely on the future business of the company, and even in the spring and summer of 1920 its finances and business were in an uncertain rather than healthy condition.

In April, 1920, one of the boats carried on the books at a value of $10,000 was sold, and netted the company only $600. There is no evidence this was concealed from the plaintiff. The uncontradicted testimony shows the sale and the net receipts therefrom appeared on the books, and must have been disclosed in the monthly reports, if analyzed, which the plaintiff had each month.

The trial balance contained in the June report showed a loss in tangible assets since the March report, which are the only ones in evidence, of approximately $20,000, with an increase in accounts and notes payable of $2,000. No one purchasing stock of a company could shut his eyes to such facts and claim he was deceived by the values at which the assets were carried on the books.

The plaintiff made an unfortunate investment as many other men did in anticipation of war business and war values continuing. His loss, however, was due to his failure to avail himself of information readily accessible to him and his reliance on opinions and estimates of a business associate and friend.

To sustain an allegation of fraud, the evidence should be clear and convincing. *Barrows* v. *Sanborn*, 114 Me., 71, 74-5. The jury must have been prejudiced by the defendant's testimony, or his manner of testifying, and disregarded the instructions of the Court as to the essential elements of an action of this kind and the degree of proof necessary to sustain allegations of fraud and deceit. No exceptions to the Judge's charge being taken, we must assume that he fully and correctly instructed the jury as to what are actionable misrepresentations and the degree of proof necessary to establish them.

Taking all the testimony of the plaintiff as true, we find it fails to establish any false representations or acts that, in view of the plaintiff's knowledge and means of obtaining full information, are actionable at law.

*Motion sustained.*
*New trial granted.*