PATRICK PELKEY
*vs.*
CLYDE L. NORTON

Sagadahoc.   Opinion, October 10, 1953.

*Basil A. Latty,* for plaintiff.

*Edward W. Bridgham,* for defendant.

SITTING: MERRILL, C. J., THAXTER, FELLOWS, WILLIAMSON, TIRRELL, JJ., MURRAY A. R. J.

TIRRELL, J.   This is an action "on the case" for deceit.

The plaintiff, who is a dealer in automobiles and trucks in the town of Topsham, alleged that he and the defendant entered into an agreement for the purchase and sale of a 1951 Packard automobile, by the terms of which the plaintiff sold the defendant a 1951 Packard automobile for a total

sales price of $3,007.84, and in payment thereof, the defendant paid to the plaintiff the sum of $1,807.84 in cash and sold or, as the term is commonly used, "traded in" a truck towards the purchase price of the Packard automobile, for which the plaintiff "allowed" the defendant a credit on the purchase price of $1,200, making payment in full.

The truck which the defendant sold or traded in was a 1947 Chevrolet truck. The plaintiff contends that at the time of their negotiation for the sale of the Packard automobile, the truck owned by the defendant was represented to be a 1949 Chevrolet truck by the defendant; whereas in truth and fact the truck was a 1947 model, and was known by the defendant to be a 1947 model, but was falsely represented by the defendant to induce the plaintiff to allow a greater amount as its trade-in value.

The undisputed testimony of witnesses for the plaintiff indicates the facts to be,—the plaintiff is an automobile dealer and had been for several years. On the date alleged in the declaration the defendant went to the place of business of the plaintiff and conversation was had between the parties concerning the sale by the plaintiff to the defendant of a 1951 Packard sedan. The selling price of the Packard, including extras, handling charges, and taxes, including the State sales tax, was $3,007.84. The defendant was the owner of a Chevrolet dump truck which he wished to "trade in" as part payment for the Packard sedan. It was, of course, essential for the plaintiff to know the year of manufacture of the truck in order to make the proper allowance as its "trade-in" value. The defendant informed the plaintiff it was a 1949 truck, saying: "I ought to know, I bought it new." The year of manufacture may be determined by securing serial and motor numbers imprinted on the frame and motor and by then referring to a certain book showing the year of manufacture. Included in the serial number is a key letter. The plaintiff by himself or his agents obtained

certain numbers and a serial letter from the impression on the car. A mistake was apparently made in reading the letter *Q* as *O*. No serial letter *O* was revealed in the Dealers Book. The letter *Q*, if read correctly, would have informed the plaintiff that the Chevrolet truck was a 1947 model. The 1947 and 1949 models were of the same general appearance. The plaintiff then asked the defendant to show him the original bill of sale but was informed by defendant that it was at his son's house in North Yarmouth. The difference in the trade-in price between a 1949 model and a 1947 model was approximately $700. The plaintiff allowed the trade-in price of a 1949 model. Applications for registration of this same truck signed by the defendant and introduced by plaintiff as exhibits show the year model as a 1947. The plaintiff sold this truck to a third person as a 1949 model who later informed the plaintiff of the error in the date of the model and brought suit for damages against this plaintiff.

Upon completion of the plaintiff's evidence the defendant rested, and moved for a directed verdict for the defendant, which was granted, to which the plaintiff seasonably filed his exceptions. After the motion for a directed verdict was granted for the defendant, and before judgment was rendered, the plaintiff filed a motion for a directed verdict for the plaintiff, which motion was denied, and to which denial the plaintiff also took exceptions.

The plaintiff now prosecutes in this court on his exceptions to the granting of the motion for a directed verdict for the defendant and the denial of the motion for a directed verdict for the plaintiff.

The presiding Justice, in a short summation to the jury, before directing the verdict for the defendant, gave his reasons based on the case of *Benjamin H. Coffin* v. *Winfred S. Dodge*, 146 Me. 3, explaining to the jury that among the elements of deceit is one that a plaintiff in such a case must prove "that the plaintiff did not know the representation to

be false, and by the exercise of reasonable care could not have ascertained its falsity."

In *Coffin* v. *Dodge, supra,* we said on pages 5 and 6:

"In the case of *Crossman* v. *Bacon & Robinson,* 119 Me. 105, 109, the elements in deceit are stated to be '(1) a material representation which is (2) false and (3) known to be false, or made recklessly as an assertion of fact without knowledge of its truth or falsity and (4) made with the intention that it shall be acted upon and (5) acted upon with damage. In addition to these elements it must also be proved that the plaintiff (6) relied upon the representations (7) was induced to act upon them and (8) did not know them to be false, and by the exercise of reasonable care could not have ascertained their falsity. Every one of these elements must be proved affirmatively to sustain an action of deceit.' "

There is a well recognized exception to or limitation upon so much of the foregoing clause numbered (8) as requires proof that the plaintiff by the exercise of reasonable care could not have ascertained the falsity of the representation. This exception or limitation was recognized by us in *Coffin* v. *Dodge* when in that opinion we cited the cases establishing the exception, saying:

"Although there are limitations on the foregoing general rules, (as to the elements of actionable deceit) see *Banking Company* v. *Cunningham,* 103 Me. 455; *Harlow* v. *Perry,* 113 Me. 239, and *Bixler* v. *Wright,* 116 Me. 133, see also 61 A.L.R. 492, 497 (b), the facts of this case do not bring it within such limitations."

The limitation on the foregoing clause numbered (8) is that one cannot escape liability for *intentional misrepresentation* on the ground that the plaintiff negligently relied thereon. In *Bixler* v. *Wright,* 116 Me. 133, 139 we said:

"The law dislikes negligence. It seeks properly to make the enforcement of men's rights depend in

very considerable degree upon whether they have been negligent in conserving and protecting their rights. But the law abhors fraud. And when it comes to an issue whether fraud shall prevail or negligence, it would seem that a court of justice is quite as much bound to stamp out fraud as it is to foster reasonable care."

*Corpus Juris Secundum,* Vol. 37, under the title "Fraud," classifies fraud as being "actual and constructive," and sets forth that these two classes of fraud are distinguished by the presence or absence of an intent to deceive. In actual fraud intent to deceive is an essential element. It implies deceit. It consists in deception intentionally practiced to induce another to part with property or to surrender some legal right. Falsehood is an ingredient thereof. (See 37 C.J.S., p. 208, Sec. 2).

Many decisions hold that one guilty of actual fraud may not excuse his own wrongful acts by claiming that the person defrauded was guilty of contributory negligence.

In *Eastern Trust & Banking Company* v. *Andrew W. Cunningham,* 103 Me. 455, 465, 466, the court said:

"But the defendant contends further that if the plaintiff did not know, it ought to have known, and would have known but for its own negligence. We think this defense cannot avail. There are cases which hold that where one carelessly relies upon a pretence of inherent absurdity and incredibility, upon mere idle talk, or upon a device so shadowy as not to be capable of imposing upon anyone, he must bear his misfortune, if injured. He must not shut his eyes to what is palpably before him. But that doctrine, if sound, is not applicable here. We think the well settled rule to be applied here is that if one intentionally misrepresents to another facts particularly within his own knowledge, with an intent that the other shall act upon them, and he does so act, he cannot afterwards excuse himself by saying 'You were foolish to believe me.' It does not lie in his mouth to say that the one trusting him was

negligent. In this case the fact whether or not there were funds in the Gardiner bank to meet the checks was peculiarly within the knowledge of the defendant. The rule is stated in Pollock on Torts, sect. 252, as follows:—'It is now settled law that one who chooses to make positive assertions without warrant shall not excuse himself by saying that the other party need not have relied upon them. He must show that his representation was not in fact relied upon. In short, nothing will excuse a culpable misrepresentation short of proof that it was not relied upon, either because the other party knew the truth, or because he *relied wholly* on his own investigations, or because the alleged fact did not influence his actions at all.' " *(Emphasis ours)*

Also, in *Charles Linington* v. *George H. Strong et al.*, 107 Illinois 295, 296:

"A party guilty of fraudulent conduct, whereby he induces another to execute a written contract, will not be allowed to impute negligence to the latter as against his own deliberate fraud. Even where parties are dealing at arms' length, if one of them makes to the other a positive statement upon which the latter acts, with the knowledge of the party making such statement, in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent, and from it the guilty party can take no benefit.

"While the law requires of all persons the exercise of reasonable prudence in the business of life, and does not permit one to rest indifferent in reliance upon the interested representations of an adverse party, still there is a certain limit to this rule; and as between the original parties, when it appears that one has been guilty of an intentional and deliberate fraud, by which, to his knowledge, the other has been misled and influenced in his action, he cannot escape the legal consequences of his fraudulent conduct by saying that the fraud might have been discovered had the party whom he deceived exercised reasonable care and diligence."

This case has been twice quoted with approval by this court, to wit, in the cases of *Bixler* v. *Wright,* and *Eastern Trust & Banking Company* v. *Cunningham,* both *supra.* The same doctrine was recognized in *Elmer E. Harlow et al.* v. *Fred E. Perry,* 113 Me. 239, when we said:

> "We think the well settled rule to be applied here is that if one intentionally misrepresents to another facts particularly within his own knowledge, with an intent that the other shall act upon them, and he does so, he cannot afterwards excuse himself by saying, 'you were foolish to believe me.' It does not lie in his mouth to say that the one trusting him was negligent."

The present case is clearly distinguishable from *Coffin* v. *Dodge, supra.* The facts bring it within the limitation on the general rules laid down therein. In this record there is testimony which, if believed by the jury, would justify a finding that the defendant was guilty of an actual, intentional, false and fraudulent misrepresentation to the plaintiff. If so, negligence on the part of the plaintiff in reliance thereon was no defense to his action of deceit. There was sufficient evidence in this record to justify a finding by the jury of the existence of every essential element of actionable fraud.

On this record it was error to direct a verdict for the defendant and the plaintiff's exception thereto must be sustained. The plaintiff's motion to direct a verdict for himself having been made after verdict had been ordered for the defendant came too late. Exception to its denial must be overruled. Entry will be

*Exception to direction of verdict for the defendant sustained.*

*Exception to refusal to direct verdict for the plaintiff overruled.*