Gerard G. LETELLIER and
Priscilla Letellier

v.

Frederick J. SMALL.

Supreme Judicial Court of Maine.

April 19, 1979.

Caron, Ayotte & Caron by Edward L. Caron, Jr. (orally), Saco, for plaintiffs.

Waterhouse, Carroll & Cyr by Robert N. Cyr (orally), Peter L. Edmands, Biddeford, for defendant.

Before McKUSICK, C. J., and POMEROY, ARCHIBALD, DELAHANTY, GODFREY and NICHOLS, JJ.

McKUSICK, Chief Justice.

Defendant-vendor Frederick J. Small appeals from a jury verdict awarding plaintiffs-vendees Gerard and Priscilla Letellier $9,500 in damages for deceit in his sale of real estate to them. The core of the Letelliers' complaint is that Small fraudulently misrepresented the results of a soil test in order to prevent them from learning that no subsurface sewage system could be installed on the land they purchased from Small. Small rests his appeal on two grounds. First, he argues that the evidence was insufficient to support the jury's finding that the plaintiffs made reasonable efforts to determine the truth or falsity of his representation regarding the soil report. And, second, he contends that the presiding justice erred in rejecting certain instructions that he proposed.

We deny the appeal.

In October 1976 the Letelliers purchased from Small a parcel of undeveloped land known as "lot 8" located in Biddeford. In 1974 Small had sought approval of the lot along with others as a subdivision from the Biddeford Planning Commission. After receiving the results of a soil analysis test, the Biddeford Planning Commission imposed two restrictions on lot 8; namely, that the lot had to be serviced by the municipal water system and that no subsurface sewage disposal system would be permitted. The commission entered these restrictions upon a subdivision plan which included lot 8, and Small's attorney filed that plan with the Registry of Deeds in York County.

It is uncontroverted that the Letelliers did not know of the restriction prohibiting use of a subsurface sewage system on lot 8 until after the purchase. However, the parties presented conflicting evidence as to whether defendant Small (1) knew of the restrictions prior to plaintiffs' purchase of

the lot and (2) intentionally or recklessly misled plaintiffs by indicating that the lot had passed the soil test.

As to the first factual issue, plaintiffs established that defendant at times had in his possession the soil report and a copy of the subdivision plan including the restrictions. Small denies having obtained knowledge of the restrictions prior to the sale of the land, either through his attorney or from his own examination of the subdivision plan or the soil report.

As to the second factual issue, plaintiffs testified that (a) they asked Small whether the lot passed the soil test and defendant replied, "Yes, it has"; (b) defendant offered to show plaintiffs a copy of the soil analysis, but later said that he was unable to find the report; and (c) defendant showed plaintiffs a copy of the subdivision plan that did not include the restrictions. Small admitted that he could not find the soil report and that he showed plaintiffs a copy of the subdivision plan that did not contain the restrictions. However, defendant testified that he also showed plaintiffs a copy of the subdivision plan that did include the restrictions and that in answering plaintiffs' question regarding the soil report, he had replied, "I must have done something right. I can sell a piece of land." While admitting this response was ambiguous, defendant argues that plaintiffs could not have justifiably relied upon it.

Upon learning of the proscription against a subsurface sewage system, plaintiffs abandoned their plans to build a house on lot 8 and brought the instant suit seeking damages for fraud and deceit. Defendant now appeals from the jury's verdict in favor of the plaintiffs.

The presiding justice's instruction setting forth the elements of the tort of fraud or deceit tracked the language of *Crossman v. Bacon & Robinson Co.*, 119 Me. 105, 109 A. 487 (1920). In *Crossman* the Law Court held that in an action for fraud or deceit, a plaintiff must establish the following elements:

" '(1) a material representation which is (2) false and (3) known to be false, or made recklessly as an *assertion of fact* without knowledge of its truth or falsity and (4) made with the intention that it shall be acted upon and (5) acted upon with damage.' " *Id.* at 109, 109 A. at 489.

In addition, the court stated that a plaintiff must show that he

"(6) relied upon the representations (7) was induced to act upon them and (8) did not know them to be false, and *by the exercise of reasonable care could not have ascertained their falsity.*" (Emphasis added) *Id.* at 109, 109 A. at 489.

Defendant maintains that the evidence was insufficient to support the jury's finding that the plaintiffs made reasonable efforts to investigate the truth or falsity of defendant's representation regarding the soil report.

Before evaluating the specifics of defendant's argument, however, it is necessary to consider whether the eighth element of fraud set forth in *Crossman* nearly 60 years ago has continued validity. In Maine case law, there are two conflicting lines of authority on the question whether the victim of a fraudulent misrepresentation, in order to recover, must establish that he made reasonable efforts to ascertain the truth or falsity of the representation. The rule advanced in *Crossman* is traceable to an 1851 decision in which the Law Court stated that it would not intervene to aid a plaintiff who "had the full means of detecting the fraud and ascertaining the truth, and neglected to inform himself of it, when he might easily have done so . . . ." *Pratt v. Philbrook*, 33 Me. 3, 23 (1851). The Law Court affirmed the plaintiff's duty to investigate the representations of a defendant in two subsequent nineteenth century cases, *Bourn v. Davis*, 76 Me. 223 (1884) (vendor's misrepresentation regarding value of land not actionable where vendee could have determined true appraisal by consulting public records), and *Palmer v. Bell*, 85 Me. 352, 27 A. 250 (1893) (vendor's misrepresentation that there was no "trouble" regarding a right of way over land sold to vendee not actionable where vendee could have ascertained truth or falsity of representation by contacting owner of the easement).

The second line of authority emerged in *Eastern Trust & Banking Co. v. Cunningham,* 103 Me. 455, 70 A. 17 (1908). In *Cunningham* a plaintiff-payee-bank based its action for deceit on the defendant-drawer's implied misrepresentation that there were sufficient funds in a drawee bank to pay the check drawn to the order of the payee. In rejecting the drawer's argument that the negligence of the officers of the payee bank in failing to discover the drawer's misrepresentation should bar recovery for deceit, the Law Court stated:

"There are cases which hold that where one carelessly relies upon a pretense of inherent absurdity and incredibility, upon mere idle talk, or upon a device so shadowy as not to be capable of imposing upon any one, he must bear his misfortune, if injured. He must not shut his eyes to what is palpably before him. But that doctrine, if sound, is not applicable here. We think the well settled rule to be applied here is that if one intentionally misrepresents to another facts particularly within his own knowledge, with an intent that the other shall act upon them, and he does so act, he cannot afterwards excuse himself by saying 'You were foolish to believe me.' It does not lie in his mouth to say that the one trusting him was negligent." *Id.* at 465–66, 70 A. at 22.

Following *Cunningham,* the conflicting and mutually exclusive lines of authority regarding the plaintiff's duty to investigate coexisted. The *Cunningham* rule that the plaintiff's failure to exercise reasonable care to ascertain the truth or falsity of the defendant's representation poses no bar to recovery was reaffirmed in *Harlow v. Perry,* 113 Me. 239, 93 A. 544 (1915) (buyer's negligence in failing to examine goods purchased does not excuse seller's misrepresentation that all goods were of like quality), and *Bixler v. Wright,* 116 Me. 133, 100 A. 467 (1917) (buyer's failure to read contract no bar to asserting seller's fraudulent misrepresentation as defense in action for breach of contract). During the same period, *Clark v. Morrill,* 128 Me. 79, 145 A. 744 (1929) (no recovery for seller's alleged mis-

representation of value of business where buyer could have ascertained value through independent inquiry), and *Coffin v. Dodge,* 146 Me. 3, 76 A.2d 541 (1950) (no recovery for deceit where buyer could have determined falsity of dealer's representation that a second dealer could not deliver truck on time by checking the information with the second dealer), echoed the "caveat emptor" theme of the nineteenth century cases.

The 1953 case of *Pelkey v. Norton,* 149 Me. 247, 99 A.2d 918 (1953), attempted to reconcile those conflicting lines of authority. *Pelkey* involved an allegation by a car dealer that a customer had fraudulently misrepresented the model year of a truck on trade-in. The customer argued that the dealer's negligence in failing to determine the model year of the truck from its serial and engine numbers excused the alleged misrepresentation. In rejecting this contention, the court acknowledged that the eighth element of the tort of deceit as set forth in *Crossman v. Bacon & Robinson Co., supra,* imposed a duty on a plaintiff to exercise reasonable care to ascertain the truth or falsity of a defendant's representation. However, the court identified two classes of fraud, actual and constructive, "distinguished by the presence or absence of an intent to deceive," *id.* at 251, 99 A.2d at 920, and held that *Eastern Trust & Banking Co. v. Cunningham, supra; Harlow v. Perry, supra;* and *Bixler v. Wright, supra,* created an exception to the plaintiff's duty to investigate only in cases of *actual* fraud:

"The limitation on the foregoing clause numbered (8) [in *Crossman, supra*] is that one cannot escape liability for *intentional misrepresentation* on the ground that the plaintiff negligently relied thereon." (Emphasis in original) *Id.* at 250, 99 A.2d at 920.

Although the *Pelkey* case came to grips with the conflicting lines of Maine case law and for the purposes of its set of facts correctly held that contributory negligence is no defense to liability for a knowingly false representation, its analysis in terms of actual-vs.-constructive fraud carried unfor-

tunate implications for the misrepresentation that is recklessly made. In a dictum in a 1963 case, the author pointed out the inevitable conclusion to be drawn from the *Pelkey* analysis:

"Inferentially at least, the court was suggesting that the plaintiff will still be required to prove that he exercised reasonable care under circumstances not involving actual fraud and especially where the false statements were 'made recklessly as an assertion of fact without knowledge of [their] truth or falsity.' " *Public Finance Corp. v. Scribner,* 159 Me. 150, 153, 189 A.2d 368, 369 (1963) (Webber, J.) (dictum).

That "inferential suggestion" of the *Pelkey* case is, however, out of step with the law in other jurisdictions as stated in both the first *Restatement of Torts,* published in 1938, and the second *Restatement,* published in 1977. Contributory negligence is no more a defense to a recklessly false misrepresentation than it is to a knowingly false misrepresentation. Both the first and the second Restatements in section 526 define "fraudulent misrepresentation" to encompass both a representation "known to be false" and also one "made recklessly . . . without knowledge of its truth or falsity,"[1] thus referring to both potential states of mind of the maker in substantially the same way as does the third element of fraud set forth in *Crossman, supra.* Both Restatements[2] then go on to state in § 540 that "the recipient of a fraudulent misrepresentation of fact is justified in relying upon its truth although he might have ascertained the falsity of the representation had he made an investigation." Comment *a* to that section emphasizes the significance of the blackletter by stating:

"The rule stated in this Section applies not only when an investigation would involve an expenditure of effort and money out of proportion to the magnitude of the transaction, but also when it could be made without any considerable trouble or expense."

*See also Restatement (Second) of Torts* § 545A (1977) ("One who justifiably relies upon a fraudulent misrepresentation is not barred from recovery by his contributory negligence in doing so").

■ In our view the time has come to resolve once and for all the conflict in the Maine cases on the tort of deceit or fraudulent misrepresentation. We now specifically disapprove the latter portion of the eighth element of the tort as stated in *Crossman, supra.* Contrary to *Crossman* a plaintiff in an action for fraudulent misrepresentation does *not* have to prove that he "by the exercise of reasonable care could not have ascertained [its] falsity," whether the defendant's misrepresentation was knowingly or recklessly false. Consistently with the law of other jurisdictions, we apply the same rule rejecting the contributory negligence defense to a recklessly false representation as *Pelkey* applied to a knowingly false one, thus rejecting *Pelkey's* "inferential suggestion."

The rationale underlying the Restatement rule is clear. In the law of torts a reckless act involves a higher degree of culpability than a merely negligent one. Consequently, a plaintiff's negligence should not shield a defendant from liability for his reckless conduct.

1. The blackletter of *Restatement (Second) of Torts* § 526 (1977) reads as follows:

§ 526. Conditions Under Which Misrepresentation Is Fraudulent (Scienter)

"A misrepresentation is fraudulent if the maker

"(a) knows or believes that the matter is not as he represents it to be,

"(b) does not have the confidence in the accuracy of his representation that he states or implies, or

"(c) knows that he does not have the basis for his representation that he states or implies."

Both Restatements in Comment *e* to § 526 state "that fraud is proved if it is shown that a false representation has been made without belief in its truth or recklessly, careless of whether it is true or false."

2. The principal change, not here relevant, between the First and Second Restatements in §§ 525–49 is the elimination of the First Restatement's restriction of the tort of deceit to business transactions. *See Restatement of Torts,* ch. 22 "Scope Note" at 56–57 (1938). Plainly, the cause of action sued upon by the Letelliers arose in a business transaction.

Our ruling does not mean, however, that a plaintiff is justified in relying on a fraudulent misrepresentation "if he knows it is false or its falsity is obvious to him." *Restatement (Second) of Torts* § 541 (1977). The recipient of a fraudulent misrepresentation may not rely upon "a pretense of inherent absurdity and incredibility, upon mere idle talk, or upon a device so shadowy as not to be capable of imposing upon any one." *Eastern Trust & Banking Co. v. Cunningham, supra,* 103 Me. at 465, 70 A. at 22.

 To summarize, a defendant is liable for fraud or deceit if he (1) makes a false representation (2) of a material fact (3) with knowledge of its falsity or in reckless disregard of whether it is true or false (4) for the purpose of inducing another to act or to refrain from acting in reliance upon it, and (5) the plaintiff justifiably relies upon the representation as true and acts upon it to his damage.[3] A plaintiff may justifiably rely on the fraudulent misrepresentation of a defendant, whether made intentionally or recklessly, without investigating the truth or falsity of the representation. Reliance is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to him.

It remains only to apply this analysis to the case before us. As noted above, the presiding justice, implicitly relying upon *Crossman, supra,* instructed the jury that in order to recover for deceit, the Letelliers had to establish they could not have discovered the falsity of Small's representation regarding the soil report through the exercise of reasonable care. Consequently, in rendering a verdict in favor of the Letelliers, the jury found they had met a standard

of diligence that we here conclude the law does not require of plaintiffs in deceit actions. Nevertheless, defendant argues that plaintiffs' reliance on his representation regarding the soil report was not justifiable since plaintiffs failed to (1) check a copy of the subdivision plan in the Registry of Deeds which contained the restriction on a subsurface sewage system, (2) conduct an independent investigation to determine the results of the soil test once defendant aroused plaintiffs' suspicions by failing to produce the report as promised, and (3) learn of the restrictions through the attorney hired to conduct the title search by the credit institution financing the Letelliers' purchase.

 We reject defendant's contentions. None of these alleged oversights by the Letelliers establish the actual knowledge of falsity, or the obvious falsity, necessary to render their reliance unjustifiable. Nor is there any doubt of the sufficiency of the evidence to support the jury's finding that the Letelliers met the stringent due diligence requirement formerly imposed on a plaintiff by *Crossman.* Although the deed passing title to lot 8 referred to the subdivision plan recorded in the Registry of Deeds, which contained the restrictions,[4] plaintiffs' failure to consult the recorded plan is understandable in light of the fact that defendant showed plaintiffs a copy of the subdivision plan—one that did not contain the restrictions. Similarly, while Small's failure to produce the soil report as promised might have aroused suspicions, Small himself dampened any suspicions by showing plaintiffs the subdivision plan and by answering that the lot had passed the soil

---

**3.** *See Restatement (Second) of Torts* §§ 525–49 ["Fraudulent Misrepresentation (Deceit)"] (1977).

**4.** Plaintiffs concede that the reference in the deed to the subdivision plan put them on constructive notice of the restrictions. However, the doctrine of constructive notice does not shield a defendant from liability for fraudulent misrepresentation:

"A person who is victimized by a fraudulent misrepresentation is not held to constructive notice of a public record which

would have revealed the true facts, as the purpose of the recording acts is to protect bona fide purchasers for value and not those who indulge in fraud." *Grange Co. v. Simmons,* 203 Cal.App.2d 567, 21 Cal.Rptr. 757, 763 (1962).

*See also Pryor v. Aviola,* 301 A.2d 306 (Del.Super.1973); *Tuccio v. Lincoln Dev. Corp.,* 27 Conn.Sup. 373, 239 A.2d 69 (1967); *Restatement (Second) of Torts* § 540, Comment *b,* Illustration 1 (1977); *Restatement of Torts* § 540, Comment *b* (1938).

test. Finally, the circumstances regarding the plaintiffs' relationship to the attorney hired by the lending institution to conduct the title search of lot 8 were set forth in the evidence before the jury. We cannot say as a matter of law that the jury erred in finding either that the attorney was not negligent or that his negligence, if any, should not be imputed to plaintiffs. In short, the record contains ample evidence to support the jury's verdict that the Letelliers were justified in relying on Small's misrepresentation.

■ Defendant also contends the presiding justice erred in rejecting his proposed instruction to the effect that defendant's representations were not actionable if mere "dealer's talk," *i. e.*, " 'that picturesque and laudatory style affected by nearly every trader in setting forth the attractive qualities of the goods he offers for sale.' " *Eaton v. Sontag*, Me., 387 A.2d 33, 38 (1978). We disagree. The case upon which defendant heavily relies, *Eaton v. Sontag*, involved a representation by the vendors that their campsite was a "gold mine." In rejecting the plaintiff's contention that the vendors' alleged misrepresentation provided a basis for recovery, we stated:

> "[M]isrepresentations as to value and quality of land made by the vendor, even though made with fraudulent intent, are not actionable." *Id.* at 37.

In the case at bar, defendant's misrepresentation of the results of the soil test was not an expression of opinion of overall value and quality of the land, nor did defendant employ "the picturesque and laudatory style" that would have warned plaintiffs that he was indulging in mere hyperbole. Defendant's representation could in no way be categorized as "dealer's talk." It was a false statement of a very specific fact. The presiding justice properly rejected the proposed instruction.

Accordingly, the entry must be:

Appeal denied.

Judgment affirmed.

WERNICK, J., did not sit.