**Milton FERRELL, Jr.**

v.

**David COX.**

Supreme Judicial Court of Maine.

Argued June 3, 1992.
Decided Dec. 7, 1992.

---

Jack H. Simmons, Valerie Stanfill (orally), Berman & Simmons, Lewiston, for plaintiff.

Paul W. Chaiken (orally), Brett D. Baber, Rudman & Winchell, Bangor, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD and COLLINS, JJ.

COLLINS, Justice.

David Cox appeals from a judgment, entered in the Superior Court (Hancock County, *Alexander, J.*) after a jury trial, in favor of Milton Ferrell on Ferrell's claims of fraud and misrepresentation. On appeal, Cox claims that Ferrell failed to prove fraudulent misrepresentation and failed to show that Cox's actions resulted in damage to Ferrell's property. Cox also contests several evidentiary rulings and the imposition of punitive damages. We affirm the judgment.

The evidence at trial was contradictory, but the jury could have found the following facts: In 1980, Ferrell, a Florida criminal trial lawyer, became the owner of ocean front property situated at the base of Cat Cove peninsula in Stonington. He received the property in return for defending its former owner, a Mr. Booth, in a criminal case. Over the next four years he spent a substantial amount of money improving the property.

Ferrell's property abutted land owned by Cox. Ferrell's attorney, Emily Watson, owned land out on the peninsula beyond

the Ferrell property. The lots on the peninsula were without power and the utility company did not have an easement with which it could access those lots or Cox's property with telephone or power lines.

In May of 1986, Watson phoned Ferrell and told him she had a client who was purchasing a lot out on the peninsula. She told him her client wanted to know if any easements existed that could be used to provide power to the property. Ferrell expressed concern about the development of the peninsula and told Watson that he would discuss it with her when he returned to Maine. They met in August of 1986 and Ferrell told Watson that he did not want the peninsula developed but that he would be willing to grant her a utility easement so long as it was only for her own private use.

A few weeks later, Cox, an active judge of the Maine District Court, visited Ferrell and advised him that Cox's health was forcing his retirement. Cox stated that although he and his wife hoped to move into their cottage adjoining Ferrell's property, they could not do so because the cottage was without power and telephone lines. Cox asked Ferrell for an easement across a portion of Ferrell's property to provide these utilities.

Shortly thereafter, Cox returned to Ferrell's home and the two men walked along the proposed path of the easement to Cox's cottage. Ferrell spoke with Cox and his wife about the easement and the Coxes once again maintained that they opposed further development in the area. They agreed that Cox would draw up a deed for the easement and forward it to Ferrell in Florida.

Ferrell called Watson when he got back to Florida. He told her he had granted the Coxes a limited utility easement and that he would like her to review the papers regarding the easement when they arrived. When the deed arrived, Ferrell read it and then called Cox and Watson because the deed's language seemed to be broader than necessary. While the cover letter stated that the easement was intended to provide power to Cox's cottage, the deed contained no language restricting the use of the ease-

ment. Cox told him the power company required the language and that it was standard practice. Ferrell sent Watson a copy of the deed and she confirmed what Cox had told him. Sometime in October 1986, Ferrell signed the deed and returned it to Cox. In March of 1987, Cox sent Ferrell a second deed to replace the first one that Cox had lost and another deed that conveyed an additional utility easement. Ferrell signed both and returned them to Cox.

Cox had been contacted by Watson and others during the spring and summer of 1986 and asked to try to obtain utility easements for the property owners on the peninsula. In July 1987, as part of an agreement signed in January 1987, Cox combined the easements secured from Ferrell with other property rights he had assembled and sold them for $85,000 to Oceanville Associates, a partnership formed to develop the peninsula, of which Watson was a member.

Ferrell learned of the transfer of easement rights in June of 1988 after reading about it in a local newspaper. Ferrell brought the present suit against Cox, Mrs. Cox, Watson and Oceanville Associates seeking compensatory and punitive damages for their alleged fraudulent misrepresentation, conspiracy and breach of a fiduciary duty. Prior to the submission of evidence to the jury, the Coxes moved for a directed verdict on all the counts of the complaint. The court granted them a directed verdict on the conspiracy count, but denied the remainder of their motion. The jury found no liability on the part of Mrs. Cox but found Cox and Watson liable for $250,000 in compensatory damages and assessed $75,000 punitive damages against Cox and $100,000 punitive damages against Watson. This appeal followed.

I.

■ Cox claims that the court abused its discretion when it excluded testimony bearing on the circumstances surrounding Ferrell's original purchase of the property. He claims the testimony was relevant because Ferrell had testified about the property's value at that time. The court ruled

that any possible probative value the testimony might have was outweighed by the danger of confusion and prejudice. Such a ruling will stand unless it is shown to be an abuse of discretion. *Gurski v. Culpovich,* 540 A.2d 764, 766 (Me.1988).

Ferrell testified that the property was worth about $200,000 when he acquired it in 1980. Ferrell also testified that the property's most attractive feature was its relative seclusion. Cox asserts that the court should have allowed the jury to learn that Ferrell had not paid cash for the property but had received it in return for legal services. He also wanted to show that Ferrell discontinued his representation of Booth, the prior owner, before the conclusion of Booth's criminal case.

The court concluded that the property was obtained in exchange for legal services and that Ferrell discontinued his representation of Booth prior to the completion of his criminal case and this fact had little probative value. Cox maintains that these facts undermine Ferrell's contention that he bought the property because it was isolated. On the contrary, the land's seclusion may have prompted Ferrell to accept it in lieu of another form of payment.

Allowing testimony on the circumstances of Ferrell's acquisition of the property would have raised numerous tangential issues that had no bearing on the case. *See* M.R.Evid. 403. Testimony as to the value of the legal services Ferrell rendered and the nature of his arrangement with Booth had little or no probative value. The transaction took place seven years before the transfer of the easements and nine years before this suit was filed. The court did not abuse its discretion when it excluded testimony as to how Ferrell originally acquired the property.

## II.

██ Cox maintains that the court erred when it denied that portion of his motion for a directed verdict premised on Ferrell's failure to prove justifiable reliance, part of a plaintiff's *prima facie* case in an action alleging fraudulent misrepresentation. *See Letellier v. Small,* 400 A.2d 371, 376 (Me. 1979). Cox advances two arguments in support of his contention that Ferrell failed

to prove justifiable reliance. First, Cox claims that when there is a conflict between an oral statement and a written agreement, the court should accept the written agreement as evidence of the parties' intent and ignore the oral statements. Second, he maintains that once Ferrell sought the advice of his attorney, Watson, he was no longer relying on Cox's statements, but was relying on the advice given to him by Watson.

The language of the deed clearly grants Cox an unrestricted easement. Ferrell admits having read the deed before signing it and also acknowledges that he knew the deed conveyed an unrestricted easement. Cox argues that when a written instrument directly contradicts prior oral statements, an experienced lawyer like Ferrell should have been alerted and if he did not accept the terms of the document, he should not have signed it. *See Turner v. Johnson & Johnson,* 809 F.2d 90, 96 (1st Cir.1986). However, Ferrell was alerted and phoned Cox to ask him why the deed appeared to give Cox an unrestricted easement. Cox told him that the utility company had insisted on the broader language and reassured Ferrell that he had no intention of sharing the easement with others. Ferrell then called Watson who confirmed Cox's explanation.

██ Maine precedent is clear. A signed agreement that contradicts prior oral statements does not bar an action for fraud as a matter of law. Parol evidence of fraudulent inducement may be introduced to show that a signed document does not reflect the intent of the parties. *Harriman v. Maddocks,* 518 A.2d 1027, 1029 (Me.1986). A plaintiff's reliance on the fraudulent misrepresentations of a defendant is unjustified only if the plaintiff knows the representation is false or its falsity is obvious to the plaintiff. *Letellier v. Small,* 400 A.2d 371, 376 (Me.1979) Here, the record establishes that Ferrell agreed to sign the deeds conveying an easement to Cox only after Cox told him the broader language had been included on the request of the utility company and reaffirmed his previously stated intention to use the ease-

ment only to reach his own property. Based on this evidence the jury rationally could have found that Ferrell did not know Cox's representations were false or that the falsity of Cox's representations was not obvious to him.

■ Cox also argues that because Ferrell consulted Watson prior to signing the deed the jury could not have found that Ferrell relied on Cox's statements. Cox's statement need not have been the sole or even decisive factor in his decision to sign the deed. It need only have substantially influenced his decision. "[I]t is immaterial that [a party] is influenced by other considerations, such as similar representations from third persons, if [that party] is also substantially influenced by the misrepresentation in question." *Restatement (Second) of Torts* § 546, comment b.

■ The jury's finding of justifiable reliance must be upheld if that finding is supported by credible evidence in the record, and all justifiable inferences drawn from that evidence when viewed in a light most favorable to the prevailing party. *Jourdain v. Dineen,* 527 A.2d 1304, 1306 (Me. 1987). The record contains credible evidence from which it can be inferred that Ferrell substantially relied on the assurances given to him by Cox and therefore supports the jury's finding of justifiable reliance.

## III.

■ Cox argues that Ferrell failed to introduce competent evidence of any compensatory damages and that therefore the judgment against Cox must be dismissed. "Property owners, by reason of their ownership alone, may state their opinion as to the fair market value of their property." *Walters v. Petrolane–Northeast Gas Service, Inc.,* 425 A.2d 968, 974 (Me.1981). Ferrell testified that he felt that his property lost about $250,000 to $200,000 in value as a result of the sale of the easements. There was no evidence that conclusively contradicted his opinion. The jury weighed the evidence submitted by both parties pertaining to the alleged damages to the property. There is competent evidence in the record to support the award of $250,000 in compensatory damages.

■ Cox contends that even if there was damage to Ferrell's property it was not caused by Cox's sale of the easements. Cox argues that because the development of the peninsula was possible without the easements he acquired from Ferrell, his acquisition and transfer of those easements did not harm Ferrell because the peninsula would have been developed anyway.

There was testimony that the alternative means of establishing utility lines to service the peninsula were impractical and too expensive. If the alternative routes had been practical, the developers would have been highly unlikely to have paid $85,000 for the easement package put together by Cox. The jury heard testimony that another developer had tried for some time to develop the area but had been unable to do so because of the difficulty encountered in reaching the area with utility lines. Development may have been possible without them, but the transfer of those easements made it much more economically feasible. The record supports the jury's finding that the sale of the easements was the legal cause of the damage to Ferrell's property.

## IV.

■ Cox, who was called as a witness in Ferrell's case in chief, also challenges the court's ruling allowing inquiry of Cox relating to the Maine Code of Judicial Conduct, Canon 5(C)(4)(c). The parties do not dispute that Canon 5(C)(4)(c) provided that a judge accepting a gift in excess of $100 in value report the date, nature of gift, name of donor and value of the gift in the judge's annual report to the Chief Justice of the Supreme Judicial Court. Although the challenged evidence could have been excluded, in the circumstances of this case we discern no clear error in the court's determination that the evidence was relevant nor can it be said the court abused its discretion in allowing the evidence to be submitted to the jury. M.R.Evid. 403.

## V.

■ Finally, Cox contends that the imposition of punitive damages absent evidence of his financial circumstances violated his constitutional rights. In *Pacific Mu-*

**1008**

*tual Life Ins. Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court upheld the Alabama Supreme Court's affirmation of the imposition of punitive damages because, as part of the appellate review process, the Alabama Supreme Court considered seven factors in deciding the award was appropriate, one of which was the defendant's financial circumstances. 111 S.Ct. at 1045, 113 L.Ed.2d at 22. The United States Supreme Court did not find that consideration of any one of those factors at the trial level, or even on the appellate level, was a constitutional prerequisite.

Under Maine law, it is not essential for a plaintiff to present evidence of a defendant's financial circumstances before a jury may consider punitive damages. *Saunders v. Van Pelt,* 497 A.2d 1121, 1127 (Me.1985). Cox was free to offer evidence of his financial circumstances and chose not to. Cox does not contend that the punitive damage award was excessive, only that the award could not be imposed without the introduction of evidence pertaining to his financial circumstances. There is no support for Cox's contention that the imposition of punitive damages without the introduction of evidence pertaining to his financial circumstances infringed on his constitutional rights.

The entry is:

Judgment affirmed.

All concurring.